Matthias, J.
 

 This prosecution was based on a claimed violation of the provisions of our statute commonly known as the Blue Sky Law, being Sections 6373-1 to 6373-24, General Code. The primary question presented is whether the transac
 
 *546
 
 tion set forth in the indictment, and shown by the evidence in the record, is one prohibited by that law.
 

 'Section 6373-1, General Code, provides as follows:
 

 “Except as otherwise provided in this act [G. C., Secs. 6373-1 to 6373-16, 6373-24], no dealer shall, within this state, dispose or offer to dispose of any stock, stock certificates, bonds, debentures, collateral trust certificates or other similar instruments (all hereinafter termed ‘securities’) evidencing title to or interest in property, issued or executed by any private or
 
 quasi
 
 public corporation, copartnership or association (except corporations not for profit), or by any taxing subdivision of any other state, territory, province or foreign government, without first being licensed so to do as hereinafter provided.”
 

 Is such certificate, or so-called “membership receipt,” a security within the contemplation of these statutes? The instruments, to deal in or dispose of which a dealer is required by this act to have a certificate of license, are, by the act itself, defined as “instruments evidencing title to or interest in property.” Lexicographers similarly define the term “security” as:
 

 “An evidence of debt or of property, as a bond, stock certificate or other instrument, etc.; a document giving the holder the right to demand and receive property not in his possession.”
 

 But we need not look further than the statute itself for a definition, for in our opinion the so-called “membership receipt” clearly falls within the express provisions of the statute. This instru
 
 *547
 
 ment, which, purports to he a receipt for an amount subscribed for a membership interest in the Citizens’ Syndicate, and is signed by the defendant as treasurer thereof, and countersigned by an alleged official of the Miami Underwriters’ Association, and which receipt is transferable only on the books of the syndicate, when properly indorsed, by its terms “entitles the above subscriber to all pro rata interest in all earnings and profits of the said syndicate, which the amount of this receipt bears to the total capital of the syndicate, as per the terms and conditions of said subscription.”
 

 It therefore clearly appears that, if the Citizens’ Syndicate had or should have any property from which there could be any profits or earnings of any sort, then the instrument in question was an evidence of title or interest in property. The view that this instrument is a security within the contemplation of the statute is not refuted by the claim of the defendant that those to whom such “membership receipts” were issued became members of an association known as the Citizens’ Syndicate, of which the Miami Underwriters’ Association was to act as organizer, and upon the procurement of subscriptions amounting to $25,000 was to organize a corporation to be known as the Independent Shale Oil Company. Such facts were set forth by an instrument introduced by the defendant below, purporting to be signed by those to whom “membership receipts” were issued, wherein it was provided that the members of the syndicate should jointly receive 1,500 shares of the common stock of the Independent Shale Oil Company, to be thereafter organized, and that the
 
 *548
 
 Miami Underwriters’ Association, for its services in obtaining the subscriptions, should receive 1,500 shares of the common stock of the company, and wherein, also, the Miami Underwriters’ Association was authorized to use the $25,000 subscribed to pay incorporation and legal expenses, and purchase for cash all the common capital stock of the corporation, and to purchase for the corporation perpetual ¡Shale Oil leases, and “to procure and publish the necessary literature and reading matter, also to construct demonstration retorts and to do anything and everything necessary to the organization of a successful selling agency, through which the issue of preferred capital stock of the Independent Shale Oil Company may be quickly sold.”
 

 It is not necessary to discuss the devious methods of procedure of this so-called Citizens’ Syndicate, or Miami Underwriters’ Association, for either or both of which the defendant below was acting. The term “company” is defined in the Blue Sky Act (¡Section 6373-2) to include “any corporation, copartnership or association, incorporated or unincorporated, and whenever or wherever organized.” Evidence in the record clearly supports the charge that the defendant below was engaged in doing the very thing prohibited by the express terms of Section 6373-14, General Code, the pertinent portion of which reads:
 

 “For the purpose of organizing or promoting any company, or assisting in the flotation of the securities of any company, after organization, no issuer or underwriter of such securities and no
 
 *549
 
 person or company for or on behalf of such issuer or underwriter shall, within this state, dispose or attempt to dispose of any such security until such commissioner shall issue his certificate as provided in Section 6373-16 of the General Code.”
 

 Certain exceptions are made which do not affect the consideration of the questions involved in this ease. Under this law, not only the sale of the securities of the company after incorporation or organization falls within the regulatory provisions thereof, but likewise the procuring or obtaining subscriptions for stock or interests in such company or association prior to the organization or incorporation thereof. Examining Section 6373-1, General Code, we observe that the prohibitive clause is, “No dealer shall * * * dispose of * * * stock, stock certificates,” etc., and then, turning to the latter part of Section 6373-2, we find the statutory definition of the term “dispose of” to be as follows:
 

 “ ‘Dispose of’ shall be construed to mean ‘sell, barter, pledge, or assign for a valuable consideration or obtain subscriptions for.’ ”
 

 Therefore a certificate of license from the commissioner of securities must be had by a dealer obtaining subscriptions for stock. However, there is a method provided by paragraph (f) of ¡Section 6373-2, General Code, whereby incorporators may be exempt from the requirements of Section 6373-11, General Code, and no legitimate enterprise is unduly restricted or inconvenienced by the imposition of the regulations of this law.
 

 All these provisions clearly evince the purpose
 
 *550
 
 of the Legislature to bring within the regulatory-provisions of the act, not only sales of stock after incorporation, but subscriptions for stock before incorporation, as well as the sale of all instruments known as securities, whether of corporations, associations, or partnerships, except those specifically exempted by this law. Even under a strict construction of the provisions of this act, which of course is required when dealing with a criminal prosecution, the conclusion is irresistible that the very transaction in question here is prohibited by the express language of the statute, and that the conviction of the defendant was warranted by the evidence disclosed by the record. This legislation was enacted for the obvious purpose of guarding investors against fraudulent enterprises, to prevent sales of securities based only on schemes purely speculative in character, and to protect the public from swindling peddlers of worthless stocks in mere paper corporations. It should be so administered as to fully meet the purpose of its enactment, and in some respects should.be strengthened and made more efficient. Such legislation would be worse than vain and useless, if, while regulating the sale of corporation stocks, it had permitted, without regulation or restriction, the sale of certificates, or “membership receipts," or instruments by whatever name, of syndicates or associations, upon the representation that at some time in the future the purchasers thereof would be entitled to and would receive certificates of stock in a company to be subsequently organized and incorporated. It is sufficient to say that no such
 
 *551
 
 loophole was left in the Blue Sky Law of this state.
 

 Judgment affirmed.
 

 Marshall, C. J., Wanamaker, Robinson, Jones, Day and Allen, JJ., concur.