Hast, J.
The question here presented is whether the contracts entered into between the defendants and the purchasers are securities required to be registered under the Ohio Scurities Act, or are they exempt from such registration?
The courts have had difficulty in determining what constitutes a ‘‘security.” As a rule they have preferred not to work out an all-inclusive definition, but have chosen to draw the lines of demarcation as the circumstances of each case present themselves.
In determining whether an interest is an investment contract or an interest in a real estate transaction, the principal test seems to be the individual control which the purchaser has over the property or business venture in which he has acquired the interest. If the purchaser is to share in the gross proceeds or net profits of operations managed by the one who is disposing of the interest, the instrument evidencing the interest transferred is generally held to be an investment contract. Thus in the case of State v. Ogden, 154 Minn., 425, 191 N. W., 916. wherein there were sales of fractional interests in a leasehold of 80 acres of oil lands, evidenced by instruments styled, “Statement and Purchase,” the court held that the interests were investment contracts because the purchasers did not intend to become freeholders or land owners but expected rather to share in the profits of a corporation thereafter to be organized to take over the management of the property. See, also, Groby v. State, 109 Ohio St., 543, 143 N. E., 126; Securities and Exchange Comm. v. C. M. Joiner Leasing Corp., 320 U. S., 344, 88 L. Ed., 88, 64 S. Ct., 120; and Securities and Exchange Comm. v. W. J. Howey Co., 328 U. S., 293, 90 L. Ed., 1244, 66 S. Ct., 1100.
On the other hand, if the purchaser of real property with others is to occupy the premises and conduct the enterprise, the instrument evidencing his interest is generally not an investment contract or a security. For example, in the case of Hathaway v. Porter Royalty Pool, Inc., 296 Mich., 90, 295 N. W., *105 571, 299 N. W., 451, 138 A. L. R., 955, the owners of royalty interests in land, each owning a prescribed area, entered into a joint contract whereby each released a right to royalties in his own tract of land in return for an undivided interest in the royalties arising from the whole tract. The contract provided that a corporation was to be organized and stock issued to the signers in proportion to the acreage held by each owner. The court held that this contract did not violate the blue sky law of Michigan and pointed out that the purpose of the proposed corporation was not to carry on a business for profit but merely to hold the pooled rights for more convenient operation; and that no stock could be issued to any one except the freeholders of the undivided land joining in the project for its convenient operation. In the course of the opinion in that case, it is said:
“* * * the formation of the corporation pursuant to the agreement in no way changed the relationship of joint adventure between the parties; that the agreement for the use of the cor-orate medium was only a convenient method of carrying into effect the joint adventure, and was not a contract within the prohibition of the blue sky law; that the issuance of stock by the corporation to the pool members was not the sale of securities within the intendment of the statute.” See, also, In re Estate of McCormick, 284 Ill. App., 543, 1 N. E. (2d), 769.
The case of Brothers v. McMahon, 351 Ill. App., 321, 115 N. E. (2d), 116, is in point. In that ease, the purchaser of a housing unit in a co-operative apartment project brought suit against the seller to recover $1,600 paid, on the ground that the sale contract violated the Illinois Securities Act, which is quite similar to that of this state. The seller corporation was engaged in erecting and selling low-cost co-operatively owned houses in Chicago. Plaintiff, in response to an advertisement of the defendant owner, was advised that the corporation did not own title to the land in question but would acquire it and then transfer the interest in an undivided but specifically designated unit to the plaintiff. The price was $10,600, of which $1,600 was to be paid down and the balance out of the proceeds of a loan to be obtained on the unit. Provision was made in the contract for title to the entire building to be held either by a corporation or land trust. If title was taken by a corporation, plaintiff was to receive stock in such corporation *106 lor Ms proportionate share of the value of the entire building. If the title should be taken by a trust, plaintiff was to receive a corresponding beneficial interest. The seller company became bankrupt before it was able to complete the project and also violated its agreement by commingling funds with those of other projects. The action was against the officers of the seller corporation. Plaintiff claimed that the receipt issued to him, the prospectus of the project and the proposed trust agreement constituted “securities” within the Illinois blue sky law.
The trial court dismissed plaintiff’s action, and on appeal the appellate court held:
“Receipt, prospectus describing a co-operative housing project similar to the type that was to be purchased, and a standard contract for the construction and purchase of a dwelling unit, including an agreement by the purchaser to agree with other purchasers who would reside in the same dwelling unit on either a corporation or a land-trust method of cooperative management of the unit, was a contract for the sale of real estate, and not a security within the meaning of the blue sky law.”
It is stated in the opinion in that case:
“* * * The buyer agreed to execute an agreement with other purchasers who would reside in the same co-operative dwelling unit as would insure the entire dwelling unit would be managed on a co-operative basis. To achieve this it was contemplated that plaintiff would have stock in a corporation . or a beneficial interest in a land trust. These alternatives were i merely mechanical incidents to the basic contract which was for .the sale of an interest in real estate. * * *
í C * *
‘ ¡ * * * Plaintiff was buying a unit in a building which was to be erected by the McMahon Corporation. He was not sharing in the profits of the corporation nor was he buying anything other than an interest in the real estate with other joint owners. The medium of a land trust or corporation was used for the convenience and protection of the parties who were to purchase an interest in the building. It is the common and usual method of handling such a transaction, which was co-operative in its nature.”
Section 8624-2, General Code (Section 1707.01, Revised *107 Code), a part of the Ohio Securities Act, provides in part as follows:
“(2) The term ‘security’ shall mean any certificate or instrument which represents title to or interest in, or is secured by any lien or charge upon, the capital, assets, profits, property, or credit of any person (as that term is defined by subsection (4) of this section 2) or of any public or governmental body, subdivision or agency * * * but the provisions of this act shall not apply to bond investment companies or to the sale of real estate.
“The term ‘security’ shall, for the purposes of this act, be deemed to include real estate not situated in this state and any interest in real estate not situated in this state.” (Italics supplied.)
In the opinion of this court the provision of each of the contracts, here under consideration, to the effect that when the corporation was organized, the purchaser would transfer his interest in the property to the corporation and take stock in it to the value of the interest purchased, did not bring the transaction within the operation of the Ohio Securities Act. That provision was made necessary for the operation and management of the building as a whole after the interest of the original owner was entirely transferred to the owners of units in the building.
This court is in accord with the following statement of the Court of Appeals:
“The evidence in these cases clearly shows the buyers were buying an interest in an apartment building for the sole purpose of occupying the same as a home. That is the clear intent and purpose, as gleaned from the contract. Neither the evidence of the parties involved nor the contract itself shows any plan or scheme to invest in a profit-sharing venture. The buyers were to take possession of and occupy the property described in the contracts. This they have done and were occupying the premises at the time of trial.
‘ ‘ The purpose of an investment in a security is the hope of receiving an income as a return on such investment. There is nothing revealed by the record in these cases that shows such intent or purpose. The provisions in the contract for the formation of a corporation is incidental to the sale of an un *108 divided interest in the real estate. The inclusion of these provisions for the formation of a corporation does not destroy the basic character of the instrument, nor invalidate the right of the purchaser as specifically set out in the contract, to demand a deed for his fractional part of the real estate upon payment of the purchase price. It is true the contract requires the seller to form a corporation, but does not require the buyer to subscribe to the stock or to surrender his deed to a fractional interest in exchange for the stock. The formation of the corporation is plainly a means for operating and maintaining the property as a whole as a co-operative venture. There is evidence in the record that a number of persons who held identical contracts in the same building have completed their payments and received deeds for their fractional interest. The purchasers were buying real estate and not shares in a corporation, and being contracts for the sale of real estate are exempt from registration. ’ ’
The judgments of the Court of Appeals are affirmed.

Judgments affirmed.

Zimmerman, Stewart, Bell and Taft, JJ., concur.
Weygandt, C. J., and Matthias, J., dissent.