EMERY ET, PLAINTIFFS-APPELLANTS, *v.* SO-SOFT OF OHIO, INC. ET, DEFENDANTS-APPELLEES.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 26876.   Decided June 4, 1964.

*Messrs. McCrone & Gareau, Mr. Warren P. Geiger,* of counsel, for plaintiffs-appellants.

*Mr. Frederick J. Ball, Messrs, Hahn, Loeser, Freedheim, Dean & Wellman, Mr. Harry C. Nester* and *Mr. Lee E. Powar,* of counsel, for defendants-appellees.

WASSERMAN, J. The plaintiffs-appellants, Emil R. Emery and Janet L. Emery, hereinafter referred to as plaintiffs, filed their petition in the Rocky River Municipal Court against the defendant-appellee, So-Soft of Ohio, Inc. (formerly Zeo-Ran of Ohio, Inc.), hereinafter referred to as So-Soft and defendant-appellee, Security Federal Savings and Loan Association, here-

inafter referred to as Security Federal. The petition alleges that So-Soft is a corporation doing business in the State of Ohio, and is engaged in the sale, distribution, and installation of water conditioning equipment, that Security Federal is a corporation engaged in the business of lending money within the State of Ohio.

The petition further alleges that So-Soft, through its agent and employee, induced the plaintiffs to sign a contract termed a referral agreement, that the terms of this agreement provided that plaintiffs were to purchase a water conditioner from So-Soft, which was to install it, that So-Soft promised a guaranteed amount of money to plaintiffs for furnishing So-Soft with the names of prospective purchasers of water conditioners when such parties bought from or more appointments with So-Soft, that had it not been for the promises of So-Soft to pay this money they would not have entered into the contract.

Plaintiffs further allege that the referral agreement is a "security" under and by virtue of the Ohio Securities Act, that it is not registered with the Division of Securities in the State of Ohio, that neither So-Soft nor its employees and agents is licensed to sell such securities, and that the sale of such securities was made in violation of Section 1707.01, et seq., Revised Code.

Plaintiffs further allege that Security Federal aided So-Soft in the sale of the security for the reason that it was a source of financing and discounting cognovit notes received in payment therefor, that plaintiffs were induced by So-Soft to sign a note in the amount of $876.60, that such note was purchased by Security Federal, and that Security Federal had notice and knowledge of the circumstances surrounding the making of such note.

The plaintiffs pray that the court find that the purchase contract was in violation of Section 1707.01 to Section 1707.45, Revised Code, that the court declare the contract void, that judgment be rendered against defendants for $876.60 and costs, and that the court grant such other and further relief as might be equitable in the premises.

So-Soft filed an answer which, inter alia, denies that the sale to plaintiffs occurred in the manner described by them,

denies that the referral contract constituted a sale of a security, denies that the referral contract was sold to the plaintiffs, denies that Security Federal participated in any sales in any manner, and denies that Security Federal had any knowledge of the facts and circumstances of the particular sale to plaintiffs.

Security Federal filed a second amended answer which, inter alia, denies that the referral agreements as described in plaintiffs' petition are securities, denies that it aided the parties, and denies that it had any notice or knowledge of the circumstances surrounding the making of the note described in plaintiffs' petition. Instead, Security Federal alleges that it purchased the promissory note for $648.00 from So-Soft in the ordinary course of business, without knowledge of any infirmities, and in good faith, and that the note was signed by the plaintiffs.

Trial was had to the court without the intervention of a jury, and the trial court found in favor of defendants, So-Soft and Security Federal, and against the plaintiffs.

Thereupon, the plaintiffs perfected their appeal to this court on questions of law seeking to have the judgment of the Rocky River Municipal Court reversed on the grounds that it is contrary to law and that the trial court erroneously determined that the referral agreement did not constitute a security within the meaning of the Ohio Securities Act.

The bill of exceptions filed in this cause and allowed by the trial court contains an agreed statement of facts which had been filed in the trial court and copies of the referral agreement, qualified appointment guarantee, promissory note, and sales agreement.

It is undisputed that plaintiffs agreed in writing to purchase a water softener on the instalment plan for the sum of $648.00 from So-Soft, which was delivered and installed and was still in use at the time of trial, that So-Soft promised to pay to the plaintiffs a fee of $100.00 for each customer who purchased a water softener from it and who had been referred to it by the plaintiffs, that So-Soft agreed to pay to the plaintiffs $300.00 for a list of twenty "qualified prospects," that at the time the contract was executed, the plaintiffs signed a

promissory note payable to Zeo-Ran of Ohio, the predecessor of So-Soft of Ohio, Inc. in the amount of $876.60, that the note makes no mention of the referral provisions contained in the purchase contract, that it was negotiated to and purchased by Security Federal for the sum of $648.00, and that Security Federal forwarded a payment book to plaintiffs who made six payments on the note and then defaulted.

It is also undisputed that the plaintiffs, through their counsel, have tendered to So-Soft the purchase agreement on the theory that they were tendering the security and stated that they are ready and willing to return the water softener to So-Soft.

The alleged security as shown by the bill of exceptions is entitled ''Zeo-Ran of Ohio, Inc., Referral Agreement,'' and recites, in part:

''The undersigned seller agrees to sell and install and the undersigned purchaser agrees to buy the article listed below at the prices and terms set.

| Description | Price |
|---|---|
| One Water Conditioner Cash Sales Price | $648.00 |
| Model SS20 less down payment | ——— |
| Completely Automatic Unpaid Balance | 648.00 |

''1. The Buyer (s) agrees to pay said total contract Time Balance in 60 successive monthly installments of $14.61 on the 25 day of each month beginning November 25, 1962 at the office of Seller's Assignee.
''* * *

''3. Zeo-Ran of Ohio, Inc. shall pay the sum of $100.00 for each name submitted by Emil R. Emery providing the name submitted results in a sale, upon approval of credit.
''* * *

''4. The payments herein provided shall be the sole and only compensation due from Zeo-Ran of Ohio, Inc., and it is expressly understood that in accepting this contract, Emil R. Emery is acting as an independent contractor and shall pay all local, city, county, state and federal taxes on any commission received by him and shall hold Zeo-Ran of Ohio, Inc., harmless for any of these taxes.''

Plaintiffs contend that the above referral agreement constitutes a security as that term is defined by Section 1707.01 (B), Revised Code, and that under the provisions of Section 1707.43, Revised Code, they have the right, upon tender of the security to the seller, to avoid the sale and to seek redress against the seller and anyone who "aided the seller in any way in making such sale" for the full amount paid by them.

Section 1707.43, Revised Code, provides:

"Every sale or contract for sale made in violation of Sections 1707.01 to 1707.45, inclusive, Revised Code, is voidable at the election of the purchaser. The person making such sale or contract for sale, and every person who has participated in or aided the seller in any way in making such sale or contract for sale, are jointly and severally liable to such purchaser, in an action at law in any court of competent jurisdiction, upon tender to the seller in person or in open court of the securities sold or of the contract made, for the full amount paid by such purchaser and for all taxable court costs, unless the court determines that the violation did not materially affect the protection contemplated by the violated provision. * * *"

The sole issue before this court is whether the referral agreement in the instant case falls within the class of transactions which the Legislature sought to regulate by the enactment of Sections 1707.01 to 1707.99, Revised Code.

The Ohio Securities Act was enacted for the obvious purpose of guarding investors against fraudulent enterprises, to prevent sales of securities based only on schemes purely speculative in character, and to protect the public from swindling peddlers or worthless stocks in mere paper corporations, and it should be so administered as to fully meet the purpose of its enactment. *Groby* v. *State*, 109 Ohio St., 543, 143 N. E., 126.

The courts have had difficulty in determining what constitutes a security and have preferred not to work out an all inclusive definition but instead have chosen to draw lines of demarcation as the circumstances of each case present themselves. *State* v. *Silberberg*, 166 Ohio St., 101, 139 N. E. (2d), 342.

In the world of finance, a security is generally thought of as a written obligation, evidence, or document of ownership or creditorship (as a stock, bond, note, debenture, or certificate)

giving the holder the right to demand and receive property not in his possession usually issued to investors to finance a business enterprise. Webster's Third New International Dictionary of the English Language.

Section 1707.01 (B), Revised Code, provides, in part:

"Security means any certificate or instrument which represents title to or interest in, or is secured by any lien or charge upon, the capital, assets, profits, property, or credit of any person or of any public or governmental body, subdivision or agency. It includes * * * any investment contract, any instrument evidencing a promise or an agreement to pay money * * *."

The Supreme Court of the United States in defining investment contract stated in paragraphs two and four of the syllabus of *Securities & Exchange Commission* v. *W. J. Howey Co.*, 328 U. S., 293, the following:

"2. For purposes of the Securities Act, an investment contract (undefined by the Act) means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profit solely from the efforts of the promoter or a third party, it being immaterial whether the shares in the enterprise are evidenced by formal certificates or by nominal interests in the physical assets employed in the enterprise.

"4. The test of whether there is an 'investment contract' under the Securities Act is whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others; * * *."

The Supreme Court of Ohio in the case of *State* v. *Silberberg, supra,* established a test to determine whether an interest purchased was a security or an interest in realty by stating in paragraph one of the syllabus:

"1. In determining whether an interest is an investment contract or an interest in a real estate transaction, the principal test is the individual control which the purchaser has over the property or business venture in which he has acquired the interest. If the purchaser is to share in the gross proceeds or net profits of operations managed by the one who is disposing of the interest, the instrument evidencing the interest transferred is generally considered as an investment contract, but

if the purchaser of real property with others is to occupy the premises and conduct the enterprise, the instrument evidencing the interest is generally not an investment contract or security.''

In the case of *Groby* v. *State, supra,* the Supreme Court of Ohio held that the sale of ''membership receipts'' in a ''Citizens' Syndicate'' was a sale of security within the contemplation of the Ohio Securities Act. The court stated on pages 546 and 547:

''This instrument, which purports to be a receipt for an amount subscribed for a membership interest in the Citizens' Syndicate * * * when properly indorsed, by its terms 'entitles the above subscriber to all pro rata interest in all earnings and profits of the said syndicate, which the amount of this receipt bears to the total capital of the syndicate, as per the terms and conditions of said subscription.'

''It therefore clearly appears that, if the Citizens' Syndicate had or should have any property from which there could be any profits or earnings of any sort, then the instrument in question was an evidence of title or interest in property. * * *''

The case of *People* v. *Milton Syde,* 37 Cal. (2d), 765, 235 P. (2d), 601, held that contracts providing for services in training an artist for dramatic production for a stated fee and for services by the artist by participation in a film or other dramatic production in return for a share in possible profits to be realized from the sale thereof, are neither certificates of interest in a profit-sharing agreement nor transferable shares, investment contracts, or beneficial interests in title to property, profits or earnings as contemplated by the California Corporate Securities Law.

The California Supreme Court reasoned that the California Corporate Securities Law was not intended to afford supervision and regulation of instruments which constitute agreements with persons who expect to reap a profit from their own services or other active participation in a business venture. The court went on to say that such contracts are clearly distinguishable from instruments issued to persons who, for a consideration paid, stipulate for a right to share in the profits or proceeds of a business enterprise to be conducted by others.

Another case supporting this view is *Pennsylvania Securities Commission* v. *Consumers Research Consultants, Inc.,* 2

Blue Sky Law Reporter (C. C. H.), Paragraph 70, 631 (Common Pleas Court), which held that agreements between the seller of vacuum cleaners and purchaser whereby the purchasers would be paid a commission for each new purchaser whom they referred to seller were not securities and, therefore, did not have to be registered under the Pennsylvania Securities Act. The court basd its decision on the fact that the promotion plan did not involve an investment of money in the enterprise with profits to the purchasers coming solely from the efforts of others, that the purchasers were guaranteed a commission regardless of whether or not the seller made a profit, and that the purchasers were required to do some work themselves before they could earn their commission.

From the foregoing, it can be observed that to establish that an instrument or certificate is a security, it must be shown that such instrument or certificate represents an investment in a designated portion of the assets and capital of a concern with the hope of receiving a profit solely through the efforts of persons other than the investor. Conversely, such instrument or certificate cannot be deemed a security when it merely represents a purchaser's right to reap a profit from his own services, and such profit is guaranteed upon the performance of those services regardless of whether or not there is a profit and when such instrument or certificates do not represent any interest in the assets or capital of the seller.

In determining whether a certificate or instrument comprises one or more of the various classifications of securities set out in the latter provisions of Section 1707.01 (B), Revised Code, that portion must be interpreted with an eye to the first sentence, which provides that such certificate or instrument represents title to or interest in, or is secured by a lien or charge upon, the capital, assets, profits, property, or credit of the party issuing them.

It is difficult to see how the referral agreement, as shown by the record, can be classified as a certificate or instrument representing title to or interest in the capital, assets, profits, property or credit of So-Soft. Moreover, plaintiffs' contention that the referral agreement is a security for the reason that it is an instrument evidencing a promise to pay money which gives them a lien or charge on the assets and credit of the

corporation and/or that it is an investment contract is completely unsupported by the evidence in the record before this court.

Certainly, the agreement contained a promise to pay money, but so do most salesmen's commission and employment contracts drawn in this state. However, there is no mention in the referral agreement as to the acquisition of an interest in the profits made by So-Soft or to the interest acquired in its capital, assets, or property by the purchaser. There is merely an offer for a unilateral contract on the part of So-Soft to the effect that it will pay the plaintiffs a specified amount of money if they perform certain acts. Upon performance of those acts, the plaintiffs accept the unilateral offer and it becomes a binding contract and So-Soft becomes liable under its terms. If plaintiffs decide not to perform, there is no acceptance of the unilateral offer and consequently no contract.

We are in complete accord with the trial court's ruling that the distinguishing feature between the referral agreement and a security under the Ohio Securities Act is that any profit or return to a party based on the referral agreement in question must result from the personal efforts of the party receiving the profit or return, that if the party executing such agreement does nothing and fails to perform the services called for by the terms of the agreement, he receives nothing, and that if the party performs the obligations imposed upon him, he is entitled to be compensated in the same manner as provided by employment contracts or commission-type agreements, whereas a security has in contemplation complete reliance upon the effort of the seller for any return to the purchaser.

The plaintiffs were required to earn the promised remuneration contained in the agreement. Therefore, it is our belief that the referral agreement in the instant case is not a security under the provisions of Sections 1707.01 to 1707.99, Revised Code.

It is perhaps superfluous to add that the evidence before this court does not establish that plaintiffs paid any considerations for the alleged security. The agreed statement of facts contained in plaintiffs' bill of exceptions specifically states that plaintiffs agreed to purchase the *water softener* for the sum of $648.00. The purchase agreement contained in the

bill of exceptions shows that an additional $228.60 was added for finance charges. There is no evidence that plaintiffs paid for the referral agreement. The plaintiffs did proffer testimony of an alleged expert on water conditioners that his testimony would have been that the market value of the water conditioner at the time it was sold to plaintiffs was $300.00. However, there is no evidence establishing that the difference in the amount actually paid for the water conditioner and the amount it was purported to be worth was the consideration paid for the alleged security.

In addition, since we have determined that the referral agreement is not a security, there is no need to consider the propriety of the judgment in favor of defendant, Security Federal; suffice it to say that the record is completely devoid of any evidence supporting plaintffs' claim that Security Federal participated in or aided So-Soft in any way in making such sale. All that is shown is that Security Federal purchased plaintiffs' promissory note from So-Soft for $648.00.

For the foregoing reasons, the judgment of the Rocky River Municipal Court must be and is hereby affirmed.

Judgment affirmed.

KOVACHY, P. J., SILBERT, J., concur.