Samuel M. MAZZA, Plaintiff,

v.

Paul L. KOZEL, et al., Defendants.

No. C 82–1820.

United States District Court,
N.D. Ohio, E.D.

July 18, 1984.

Gail E. Sindell, Cleveland, Ohio, for plaintiff.

Christopher Nardi, Cleveland, Ohio, for defendants.

## MEMORANDUM OPINION AND ORDER

LAMBROS, District Judge.

This is an action in which plaintiff alleges that defendants have violated various provisions of federal securities laws as well as the proscriptions of the Ohio Securities Act. Presently before the Court is plaintiff's motion for partial summary judgment. In this motion, plaintiff seeks relief pursuant to Count Five of his complaint, which alleges violations of the securities laws of the State of Ohio. Also pending is defendants' motion to dismiss Count Nine of plaintiff's amended complaint.

### I. FACTS

In 1979, defendants Paul L. Kozel and Nicholas R. Wilson organized Trico Oil, Inc. (Trico), an Ohio corporation providing services in the oil and gas development business. On or about December 31, 1980, plaintiff Samuel Mazza entered into a joint venture agreement pursuant to which he obtained a 66.7% undivided interest in a venture known as the Southwest Township Program TRI/PA (80–1) (the Southwest Joint Venture). This joint venture was formed for the purpose of drilling oil and gas wells on certain sites in Pennsylvania. Plaintiff obtained his interest in the Southwest Joint Venture in consideration for payment of eighty thousand dollars ($80,-000) to defendant Trico.

Plaintiff also purchased from defendants Kozel and Wilson, doing business as Lakewood Holdings, a one-third (⅓) undivided interest in three leases to mineral rights on property located in Warren County, Pennsylvania. These leases were referred to as "the Schaeffer Lease," "the Connely

Lease," and "the Peters Lease." Plaintiff paid twenty thousand two hundred six dollars and sixty-six cents ($20,206.66) for his interest in the leases by means of a check payable to defendant Wilson.

In July of 1980, defendant Trico and an entity known as KEP Entrepreneur Ptrs. formed a corporation by the name of Magna Resources, Inc. (Magna). On or about November 7, 1980, KEP Entrepreneur Ptrs. terminated its interest in Magna and Trico remained as the sole shareholder. On January 27, 1981, plaintiff paid defendant Wilson twenty thousand nine hundred sixty-six dollars and sixty-seven cents ($20,-966.67) for five shares of Magna stock. On that same date, plaintiff paid defendant Kozel twenty thousand nine hundred sixty-six dollars and sixty-seven cents ($20,-966.67) for an additional five shares of Magna stock. By means of these two stock acquisitions, plaintiff obtained a one-third (⅓) interest in Magna.

Subsequent to his stock purchases, plaintiff advanced the sum of twelve thousand seven hundred fifty dollars ($12,750.00) to Magna for the purpose of funding the corporation's acquisition of an oil and gas lease on property located in Pennsylvania known as "the Chapman Lease." Plaintiff's contribution represented one-third (⅓) of the acquisition cost of the lease.

On February 18, 1981 plaintiff allegedly purchased from defendant Wilson a number of shares of stock in a corporation known as Power Oil Company. Plaintiff purportedly paid Wilson two thousand seven hundred fifty dollars ($2,750.00) for the Power Oil stock.

## II. THE MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff contends that all of the acquisitions, loans and other forms of investment described above constitute "securities" under Ohio law. Additionally, plaintiff maintains that none of these "securities" were registered with the Ohio Division of Securities. Thus, it is plaintiff's position that the transactions previously described represent violations of O.R.C. § 1707.44, which pro-

hibits the sale of unregistered securities. Plaintiff seeks recission of these transactions pursuant to O.R.C. § 1707.43.

Prior to a discussion of the applicable law, there is a preliminary matter that must be resolved. Defendants have moved to file a supplemental memorandum in opposition to plaintiff's motion for partial summary judgment. Plaintiff has moved to strike this supplemental memorandum. In view of the complex legal issue presented in this action, defendants' motion to file a supplemental memorandum is well taken. Consequently, defendants' motion to file a supplemental memorandum is granted and plaintiff's motion to strike the memorandum is denied.

In his motion for partial summary judgment, plaintiff contends that defendants have violated O.R.C. § 1707.44. O.R.C. § 1707.44 provides in the pertinent part:

(C) No person shall knowingly and intentionally sell, cause to be sold, offer for sale, or cause to be offered for sale, any security which comes under any of the following descriptions:

(1) Is not exempt under section 1707.02 of the Revised Code, nor the subject matter of one of the transactions exempted in sections 1707.03, 1707.04, and 1707.34 of the Revised Code, has not been registered by description, coordination, or qualification, and is not the subject matter of a transaction that has been registered by description.

This statute prohibits the sale of securities that have not been registered with the Ohio Division of Securities, or exempted from registration by the filing of a claim for exemption. Moreover, Ohio law provides that the purchaser of an unregistered security may rescind the sale and recover the purchase price.

Every sale or contract for sale made in violation of Chapter 1707, of the Revised Code [the Ohio Securities Act], is voidable at the election of the purchaser. The person making such sale or contract for sale, and every person who has participated in or aided the seller in any way in

making such sale or contract for sale, are jointly and severally liable to such purchaser, in an action at law in any court of competent jurisdiction, upon tender to the seller in person or in open court of the securities sold or of the contract made, for the full amount paid by such purchaser and for all taxable court costs, unless the court determines that the violation did not materially affect the protection contemplated by the violated provision.

O.R.C. § 1707.43. Plaintiff asserts that he has tendered return of the various investments purchased from the defendants and seeks to recover their purchase price under O.R.C. § 1707.43.

To recover under § 1707.43, the following elements must be established: "there must be a 'sale'; of a 'security'; in violation of any of the noted provisions of the securities chapter, which violation materially affects the protection contemplated by the violated provision." *Martin v. Steubner*, 485 F.Supp. 88, 97 (S.D.Ohio 1979). Thus, to obtain summary judgment on his claim under § 1707.43, plaintiff must demonstrate that: (a) the investments at issue are "securities"; (b) the defendants sold, participated in the sale, or aided the seller of the securities; (c) the securities were sold in violation of O.R.C. § 1707.44(C); and (d) the violation materially relates to the protection contemplated by that statute.

Initially, the Court must determine whether the various investments at issue in this action constitute "securities" under Ohio law. A "security" is defined in O.R.C. § 1707.01(B), which provides in the relevant part:

"Security" means any certificate or instrument which represents title to or interest in or is secured by any lien or charge upon, the capital, assets, profits, property, or credits of any person or of any public or governmental body, subdivision or agency. It includes shares of stock, certificates for shares of stock ..., promissory notes, all forms of commercial paper, evidences of indebtedness,

... syndicate certificates ... certificates or written instruments in or under profit-sharing or participation agreements or in or under oil, gas or mining leases, or certificates or written instruments of any interest in or under the same, ... any investment contract, any instrument evidencing a promise or an agreement to pay money ... any interest in real estate not situated in this state.

## A. The Southwest Joint Venture

In consideration for payment of eighty-thousand dollars, plaintiff purchased from defendant Trico a two-thirds (⅔) undivided interest in the Southwest Joint Venture. Plaintiff maintains that his interest in this joint venture falls within the statutory definition of a security as a "written instrument or participation agreement in or under oil, gas or mining leases," an "interest in real estate not situated in this state," or an "investment contract." Defendants, however, argue that plaintiff had the right to exercise managerial control over the joint venture and that his interest therein does not constitute a security.

In *Peltier v. Koscot Interplanetary, Inc.*, unreported, No. 72AP–220 (Nov. 14, 1972), the Ohio Supreme Court adopted a rather broad four point test first established in *State of Hawaii v. Hawaii Market Center*, 52 Haw. 642, 485 P.2d 105 (1971) to determine what type of transactions constitute an "investment contract" and thus a "security." That test, as later enunciated in *State v. George*, 50 Ohio App.2d 297, 362 N.E.2d 1223, 1227 (Ct.App. Franklin Cty.1975), provides that an investment contract exists when:

(1) an offeree furnishes initial value to an offeror;

(2) a portion of this initial value is subjected to the risks of the enterprise;

(3) the furnishing of the initial value is induced by the offeror's promises or representations which give rise to a reasonable understanding that a valuable benefit of some kind, over and above the initial value, will accrue to the offeree as

a result of the operation of the enterprise; and

(4) the offeree does not receive the right to exercise practical and actual control over the managerial decisions of the enterprise.

Defendants contend that plaintiff had the right to exercise practical and actual managerial control over the activities of the Southwest Joint Venture and that plaintiff's interest therein is therefore not a security. Plaintiff, however, argues that the "managerial control" test applies only to the concept of an "investment contract," which is just one of the many types of securities enumerated in O.R.C. § 1707.-01(B). Plaintiff maintains that because his interest in the Southwest Joint Venture constitutes a "written instrument or participation agreement in or under oil, gas, or mining leases" as well as "an interest in real estate not situated in this state," it is irrelevant whether he had the right to exercise any managerial control.

■■■ "A 'security' is a transaction whose characteristics distinguish it from the generality of transactions so as to create a need for special fraud procedures, protections, and remedies provided by the securities laws." Coffey, *The Economic Realties of a "Security": Is There a More Meaningful Forumula?*, 18 W.Res.L.Rev. 367, 412 (1967). The Ohio Securities Act was enacted for the purpose of guarding investors against fraudulent enterprises and to prevent sales of securities based upon schemes of a purely speculative nature. *Emery v. So-Soft of Ohio, Inc.*, 199 N.E.2d 120, 123 (Ct.App.Cuy.Cty.1964). Accordingly, any formula that purports to guide the courts in determining whether a transaction constitutes a security must be broad enough to carry out the remedial purposes of securities laws. With this consideration in mind, an analysis of the economic realities surrounding securities transactions leads to the conclusion that the "managerial control" test is applicable to any type of security. This is so because the danger of fraud being practiced upon a buyer is considerably reduced when his investment is subjected to the risks of an enterprise over which he exercises management control.

A careful review of the Ohio court decisions examining the definition of a "security" also supports the proposition that the "managerial control" test is applicable to all forms of securities. In *State v. George*, the Ohio Court of Appeals for the Tenth District stated:

> The test relates to the right of the offeree to exercise practical and actual control over the managerial decisions of the enterprise. If the offeree has such a right within the subject enterprise, as set forth within the operating agreement or otherwise, then a "security" would not be present in that, in the traditional form of securities, there is an absence of direct control over the investment by the investor.

362 N.E.2d at 1228. The Ohio Court of Appeals for the Eighth District has also enunciated this position.

> [I]t can be observed that to establish that an instrument or certificate is a security, it must be shown that such instrument or certificate represents an investment in a designated portion of the assets and capital of a concern with the hope of receiving a profit *solely through the efforts of persons other than the investor*.

*Emery v. So-Soft of Ohio, Inc.*, 199 N.E.2d at 124 (emphasis added). Additionally, it can be noted that the Ohio courts have tended to use the term "investment contract" in a general sense as the equivalent of a "security." For example, in *Leeth v. Decorator's Mfg., Inc.*, the Tenth District Court of Appeals reported, "[t]he statutory definition of a security is broadly stated in R.C. 1707.01(B) and includes any 'investment contract'." 67 Ohio App.2d 29, 425 N.E.2d 920, 922 (Ct.App. Franklin Cty. 1979).

■■ Having concluded that the "managerial control" test applies to all forms of securities, it becomes necessary to ascertain whether plaintiff did in fact have the right to exercise managerial control over the Southwest Joint Venture. Paragraph

11 of the Southwest Joint Venture Agreement (Exhibit 3 to the affidavit of plaintiff Mazza) provides that the right to conduct and operate the Venture's business shall reside with the "Manager." The "Manager" is identified earlier in the Agreement as defendant Trico. However, the subparts of paragraph 11 limit the authority of the Manager by requiring that he obtain the approval of the "Participants" before making certain business decisions. Among those named as "Participants" in the venture is the plaintiff herein. Thus, from the face of the Southwest Joint Venture Agreement, it is not possible to determine the complete extent of plaintiff's ability to exercise managerial control over the venture. Moreover, the affidavits submitted by the defendants indicate that plaintiff did exercise significant control over the venture's business. *See,* Kozel affidavit ¶ 11, Wilson affidavit ¶ 7. Consequently, a question of material fact exists as to whether plaintiff had the right to exercise substantial managerial control over the Southwest Joint Venture.

### B. The Leases

■ Plaintiff contends that the undivided one-third (⅓) interest in the Schaeffer, Connely and Peters leases, which he purchased from defendants Kozel and Wilson, constitute a "participation agreement in or under oil, gas or mining leases" and is therefore a security under O.R.C. § 1707.-01. Plaintiff also maintains that the undivided one-third (⅓) interest in the Chapman lease, which he acquired through the instrumentality of Magna, falls within the definition of a security. As discussed previously, the concept of a "security" relates to transactions in which an investor does not receive the right to exercise substantial managerial control over the enterprise in which he has invested. In the present case, defendants assert that plaintiff exercised control over the use of the leases. *See,* Kozel affidavit ¶ 11. If plaintiff did in fact have the right to exercise substantial control over the management of these leases, his interest in them would not constitute a security. Thus, there is presently a

question of material fact as to whether plaintiff had the right to exercise managerial control over the use of the Schaeffer, Connely, Peters, and Chapman leases.

### C. The Magna Stock

■ Plaintiff also seeks restitution of the purchase price of the shares of Magna stock that he obtained from Defendants Kozel and Wilson. As with the transactions discussed previously, it must be established that plaintiff did not have the right to exercise control over Magna's business in order for his interest in the corporation to be considered a security. Additionally, § 1707.03 of the Ohio Revised Code exempts certain transactions from the registration requirements of the Ohio Securities Act. Among the transactions exempted is:

A sale of securities made by or on behalf of a bona fide owner, neither the issuer nor a dealer, is exempt, if such sale is made in good faith and not for the purpose of avoiding sections 1707.01 to 1707.45 of the Revised Code, and is not made in the course of repeated and successive transactions of a similar character.

O.R.C. § 1707.03(B). A "dealer" is defined as a person engaged in the business of selling securities. O.R.C. § 1707.01(E)(1). An "issuer" is a person "who has issued, proposes to issue, or issues any security." O.R.C. § 1707.01(G). None of the defendants in this case can be considered "issuers" of the Magna stock, and plaintiff has made no allegation that the defendants are securities dealers. Defendants Kozel and Wilson have both asserted that they sold the Magna stock to plaintiff in good faith and not for the purpose of avoiding the provisions of the Ohio Securities Act. Kozel affidavit ¶ 9, Wilson affidavit ¶ 5. Thus, it is the defendants' position that they are entitled to the exemption of O.R.C. § 1707.03(B).

Plaintiff argues that the sale of the Magna stock was one of a series of repeated and successive transactions of a similar character and that the exemption of

§ 1707.03(B) is therefore not applicable. A review of the transactions that form the basis of this lawsuit indicates that they all took place between November of 1980 and February of 1981. Rather than constituting a course of repeated and successive transactions of a similar character, the timing of these transactions indicates that they were all parts of a single investment on the part of the plaintiff in the oil and gas business. Consequently, an issue of fact remains as to whether defendants Kozel and Wilson sold the Magna stock to plaintiff in good faith and are thus entitled to the exemption provided in § 1707.03(B).

### D. The Power Oil Stock

■ Plaintiff alleges that he purchased a number of shares of stock in Power Oil Company from defendant Wilson. Plaintiff seeks to rescind this transaction pursuant to § 1707.43 because the shares were not registered in accordance with the Ohio Securities Act. Defendants, however, maintain that they were not involved in the sale of Power Oil stock to plaintiff. *See*, Kozel affidavit ¶ 2. Thus, there exists a question of fact as to whether the defendants participated in the sale of Power Oil stock to the plaintiff.

### E. Conclusion

As previously noted, the purpose of the Ohio Securities Act is to protect the public from fraudulent investment schemes. This protection is unnecessary when the investor is an active participant in the development and management of the enterprise in which he has invested. In such situations, the investor is not in a position to claim that he was induced to furnish value by means of misstatements or half-truths about the character of the enterprise. In their pleadings and affidavits, defendants have asserted the plaintiff has exercised substantial managerial control over the oil and gas ventures at issue in this action. Consequently, there presently exist questions of material fact with respect to plaintiff's claim under the Ohio Securities Act.

Plaintiff's motion for partial summary judgment is therefore denied.

### III. THE MOTION TO DISMISS COUNT NINE

Defendants have moved to dismiss Count Nine of plaintiff's amended complaint, which alleges that defendants have violated the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.* Plaintiff's RICO claim is based upon 18 U.S.C. § 1964(c), which states:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

Plaintiff has alleged that defendants Kozel, Wilson and Trico conspired to perpetrate a series of securities fraud upon him in such a manner as to constitute activity prohibited by 18 U.S.C. § 1962, which provides in the pertinent part:

> (c) It shall be unlawful for any person employed by or associated with any *enterprise* engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through *a pattern of racketeering activity* or collection of unlawful debt.

(emphasis added).

■ In order to establish liability under RICO, plaintiff must prove the existence of an "enterprise" as well as the "pattern of racketeering activity." *U.S. v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981). The definition of "racketeering activity" includes the fraudulent sale of securities. 18 U.S.C. § 1961(1). A "pattern of racketeering activity" is defined as at least two acts of racketeering activity. 18 U.S.C. § 1961(5). Thus, the occurrence of at least two instances of fraud in the sale of securities would be sufficient to establish a pattern of racketeering activity.

Defendants do not contend that plaintiff has failed to allege the necessary pattern of racketeering activity to state a claim under RICO. Rather, the basis of their motion to dismiss is that plaintiff has not alleged sufficient facts to demonstrate the existence of an "enterprise." An "enterprise" is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The existence of an enterprise is established "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Turkette*, 452 U.S. at 583, 101 S.Ct. at 2528. The concept of an "enterprise" should not be confused with the "pattern of racketeering activity." "The 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages." *Id.*

In Count Nine of his amended complaint, plaintiff alleges, "Defendants Kozel, Wilson and Trico conspired together and engaged in a scheme to defraud [plaintiff] Mazza by inducing him to make a series of investments in oil and gas leases and/or entities holding oil and gas leases." Amended Complaint ¶ 40. Additionally, plaintiff avers, "The said defendants conducted or participated in the conduct of their various oil and gas enterprise affairs by means of a pattern of racketeering activity, as set forth hereinabove." Amended Complaint ¶ 41. Plaintiff has set forth no allegations upon which this Court could find the existence of an "enterprise" as defined in RICO. The averments of plaintiff's amended complaint are directed only to the existence of the "pattern of racketeering activity," that is, the fraudulent sales of securities to plaintiff. Although the proof used to establish the separate elements of the "enterprise" and the "pattern of racketeering activity" may in particular cases coalesce, proof of one does not necessarily establish the other. *Turkette*, 452 U.S. at 583, 101 S.Ct. at 2528. Plaintiff's allegations in Count Nine of his amended complaint refer only to specific transactions involving the sale of securities by the defendants. Plaintiff has not alleged that the defendants have associated together for the common purpose of engaging in a continuing course of illegal conduct. In view of plaintiff's failure to set forth allegations sufficient to support a finding that the defendants conducted the transactions that form the basis for this lawsuit in conjunction with an ongoing organization, defendants' motion to dismiss Count Nine of plaintiff's amended complaint is granted.

## IV. SUMMARY

In sum, because of the questions of material fact existing with respect to plaintiff's claim under the Ohio Securities Act, his motion for partial summary judgment is denied. Additionally, as a result of plaintiff's failure to sufficiently allege the existence of an "enterprise" among the defendants as defined in RICO, defendants' motion to dismiss Count Nine of the amended complaint is granted.

IT IS SO ORDERED.