**J & S ENTERPRISES, Plaintiff,**

v.

**David WARSHAWSKY, Defendant.**

**Civ. A. No. C88–1960.**

United States District Court,
N.D. Ohio, E.D.

March 22, 1989.

Mark J. Skakun, Buckingham, Doolittle & Burroughs, Akron, Ohio, for plaintiff.

Joshua R. Cohen, Kohrman, Jackson & Krantz, Cleveland, Ohio, for defendant.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

Before the Court are the motion of plaintiff J & S Enterprises ("J & S") for summary judgment and the motion of defendant David Warshawsky for reconsideration of this Court's January 26, 1989 denial of his motion for summary judgment. The parties agree that there are no disputed issues of material fact, and submit for resolution only legal issues concerning the application of Ohio's securities laws. For the reasons set forth below, the Court resolves those issues in favor of J & S and accordingly grants its summary judgment motion.

### I.

J & S is a general partnership formed in 1980 under Kentucky law by John C. Jansing and John B. Shaw for the purpose of investing in certain real property in Columbia, South Carolina. This real estate, which was J & S's sole asset, was then leased to the Spinnaker Corporation, which operated a restaurant on the property. Upon learning of Warshawsky's desire to invest certain available funds, Jansing and Shaw offered him a one-third interest in the partnership. After meeting with Warshawsky in Kentucky, Jansing and Shaw mailed two bills of sale to Warshawsky, which he executed in Ohio. In 1986, the J & S partnership dissolved, with Warshawsky owing $66,667.23 in unpaid contributions. J & S has sued to recover these contributions.

Warshawsky does not dispute the fact or amount of his unpaid contributions. Rather, as his sole defense to the lawsuit and ground for summary judgment, Warshawsky alleges that J & S failed to register its partnership interest as a security with the Ohio Division of Securities, which he contends it was required to do by Ohio Revised Code § 1707.01 *et seq.* Such failure, it is further asserted, "relieves Warshawsky [pursuant to O.R.C. § 1707.43] from whatever liability he may have had for the capital contributions sought by J & S...."

(Defendant's motion for summary judgment at 1.)

### II.

In support of its summary judgment motion, J & S furnishes four independent grounds, any one of which, it claims, is sufficient for judgment in its favor. These grounds are: 1) that Warshawsky's partnership interest is not a security, and so was not required to be registered; 2) that the sale of such interest did not take place in Ohio and so is in any case exempt from Ohio's securities statutes; 3) that the sale of such interest was "made by or on behalf of a bona fide owner, neither the issuer nor a dealer," and so is exempted by O.R.C. § 1707.03(B); and 4) that the remedy Warshawsky seeks is unavailable because the sale did not materially affect the protection contemplated by Ohio's securities laws.

In his reply memorandum, Warshawsky interposes colorable objections to the last three of these arguments. However, because the first, and most important, argument is left completely intact, and by itself warrants summary judgment in favor of J & S, the Court need not address the remaining legal controversies.

### III.

In their briefs, both parties have tended to confuse two different "interests" they have acquired during the course of their transactions. One is the one-third interest Warshawsky acquired *in* the J & S general partnership. The other is the interest acquired *by* the partnership in the South Carolina real estate. Only if these two interests are carefully distinguished can the question of qualification as a security be meaningfully discussed.

■ Ohio Revised Code § 1707.01(B) defines "security" as follows:

"Security" means any certificate or instrument which represents title to or interest in, or is secured by any lien or charge upon, the capital, assets, profits, property, or credit of any person or of any public or governmental body, subdi-

vision, or agency. It includes shares of stock, certificates for shares of stock, voting-trust certificates, warrants and options to purchase securities, subscription rights, interim receipts, interim certificates, promissory notes, all forms of commercial paper, evidences of indebtedness, bonds, debentures, land trust certificates, fee certificates, leasehold certificates, syndicate certificates, endowment certificates, certificates or written instruments in or under profit-sharing or participation agreements or in or under oil, gas, or mining leases, or certificates or written instruments of any interest in or under the same, receipts evidencing preorganization or reorganization subscriptions, preorganization certificates, reorganization certificates, certificates evidencing an interest in any trust or pretended trust, any investment contract, any instrument evidencing a promise or an agreement to pay money, warehouse receipts for intoxicating liquor, and the currency of any government other than those of the United States and Canada, but such sections shall not apply to bond investment companies or to the sale of real estate.

Before its amendment in 1985, this section also included the following sentence:

"Security" shall, for the purpose of such sections, be deemed to include real estate not situated in this state and any interest in real estate not situated in this state.

This last provision, as Warshawsky is quick to point out, was in effect at the time of J & S's acquisition of the South Carolina real estate. But Warshawsky mistakes the significance of this fact, which is as follows. If the seller of the South Carolina real estate had been subject to Ohio's securities laws, then *it* (and not J & S) would have been obliged to register that interest or the sale with the Ohio Division of Securities.

And J & S would, in consequence of the seller's failure so to register the interest, be able, pursuant to O.R.C. § 1707.43, to avoid the sale at its election. Warshawsky's argument that J & S failed to qualify its interest in the real estate with the Ohio Securities Division is therefore entirely beside the point.

■ What J & S sold to Warshawsky is not an interest in the South Carolina real estate, but an interest in the partnership itself.[1] This much is admitted by Warshawsky. On the third page of the memorandum in support of his initial summary judgment motion, he argues that, "Given the failure to register Warshawsky's *partnership interest* with the Ohio Division of Securities, J & S cannot enforce its claim for unpaid capital contributions" (emphasis added). It is, then, puzzling when he proceeds to invoke, in support of this contention, the former Ch. 1707 requirement that "real estate not situated in Ohio" also be registered as a security. This provision would be relevant only if J & S sold an interest in foreign real estate to Warshawsky.

■ The only relevant inquiry, then, is whether Warshawsky's interest in J & S was itself a security whose sale Ch. 1707 regulates. The definition of "security" contained in O.R.C. § 1707.01, quoted at length above, does not specifically include, among the many items to which the term applies, an interest in a general partnership. Nor does such an interest appear to be subsumed under some more general category that is specifically included. Given the analyses of this section undertaken by state and federal courts, moreover, it is easy to understand why an interest in a general partnership is to be *excluded*. The court in *Mazza v. Kozel*, 591 F.Supp. 432 (N.D. Ohio 1984), undertook a thorough

---

**1.** Warshawsky's arguments against the applicability of the exemption created by O.R.C. 1707.03(B) are therefore also beside the point. J & S had argued that, even if Warshawsky's interest in the partnership were a security, its sale would be exempted from the registration requirements because it was made by the "bona fide owner, neither the issuer nor a dealer" and was "not made in the course of repeated and successive transactions of a similar character." O.R.C. § 1707.03(B). Jansing and Shaw *were* the bona fide owners of the partnership (as opposed to issuers or dealers), and did *not* engage in repeated and successive transactions involving partnership interests. The other transactions to which Warshawsky refers the Court again involved certain interests *of,* as opposed to *in,* the partnership.

analysis of Ohio case law construing this section and concluded that, to qualify as a security under the section, *any* financial interest must satisfy the "managerial control" test. *Id.* at 436. It quoted the following passage from *State v. George,* 50 Ohio App.2d 297, 304, 362 N.E.2d 1223, 1228 (Ct.App. Franklin Cty.1975), which describes this test:

> The test relates to the right of the offeree to exercise practical and actual control over the managerial decisions of the enterprise. If the offeree has such a right within the subject enterprise, as set forth within the operating agreement or otherwise, then a "security" would not be present in that, in the traditional form of securities, there is an absence of direct control over the investment by the investor.

In determining whether an investment qualifies as a security under § 1707.01, indeed, Ohio courts uniformly require that an investor not have received the right to exercise managerial control over the enterprise invested in. *See, e.g., Emery v. So–Soft of Ohio, Inc.,* 199 N.E.2d 120, 124 (Ct.App. Cuyahoga Cty. 1964); *Peltier v. Koscot Interplanetary, Inc.,* unreported, No. 72AP–220 (November 14, 1972). It is significant, moreover, that these courts have emphasized the *right* (under the investment instrument or otherwise) of the investor to exercise managerial control, and have not required that he actually have exercised that right. Although no Ohio case has squarely addressed the narrow issue with which this Court is concerned, the interest of a general partner in his partnership would appear to fail the managerial control test.

As far as it goes, Ohio case law is consistent with federal law interpreting the federal counterpart of O.R.C. § 1707.01 namely the Securities Act of 1934, 15 U.S.C. § 78a *et seq.* The leading Supreme Court case is *Securities and Exchange Commission v. W.J. Howey Co.,* 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). The *Howey* Court, after acknowledging that any instrument having the character of an "investment contract" is a security within the meaning of the Act, held to be included within this term any "contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." *Id.* at 298–99; 66 S.Ct. at 1102–03.

Subsequent federal cases, indeed, have squarely addressed the issue of whether an interest in a general partnership meets these conditions. The consistent answer has been that it does not. The court in *Odom v. Slavik,* 703 F.2d 212, 215 (6th Cir.1983), stated:

> Normally, a general partnership interest is not considered a "security".... The managerial powers vested in general partners and the express right of inspection of documents gives them the kind of leverage and ability to protect themselves that takes them outside the intended scope of the '34 Act.

(citations omitted); *see also Youmans v. Simon,* 791 F.2d 341, 346 (5th Cir.1986). While such interpretations of federal securities laws do not of course impose on this Court a binding construction of Ohio's securities statutes, it is instructive that, when interpreting a statute comparable to Ohio's, they have resolved the issue against those who have urged that a general partnership interest be considered a security.

### IV.

It may, however, be only *generally* true that an interest in a general partnership fails to qualify as a security. Further inquiry into the specific rights and obligations of the general partner whose interest is in question may still be necessary. There can, however, be little question in this case that Warshawsky received the right to exercise managerial control over the decisions of J & S. Paragraph 8 of the partnership agreement into which Warshawsky entered with J & S provides as follows:

> Each partner shall have an equal voice in the management of the partnership business. All decisions relating to the partnership business shall be agreed upon unanimously by the partners.

Warshawsky thus received the *right,* whether or not exercised, to participate in the decision-making of, and thus to some extent to determine the direction taken by, J & S. And this, according to Ohio law, is all that is required to fail the "managerial control" test. *See State v. George,* 50 Ohio App.2d 297, 303–04, 362 N.E.2d 1223, 1228 (Ct.App. Franklin Cty. 1975). J & S does, however, buttress its position by referring the Court to numerous occasions, recounted by Warshawsky in his deposition, on which he in fact exercised the rights granted him by the partnership agreement. If the agreement were for some reason unclear or irrelevant, which it is not, such admissions would themselves provide evidence of the existence of these rights.

Evidently because he has confused his own interest in the J & S partnership with J & S's interest in the South Carolina real estate, Warshawsky does not feel the need to deny either that he had the right to exercise management control over J & S or that he in fact did so. He asserts indeed: "The degree of Warshawsky's authority over the affairs of J & S remains wholly inconsequential...." (Reply memorandum at pp. 3-4.) The Court may thus more easily make the factual finding necessary to hold, as it does, that Warshawsky's interest in J & S is not a security within the meaning of O.R.C. § 1707.01.

### V.

Because it is not a security, Warshawsky's interest in J & S was not required to be registered with the Ohio Securities Division. Warshawsky thus may not interpose this as a defense to his liability to the partnership. Because he offers no other defenses, the Court grants J & S's summary judgment motion and awards judgment in the amount of $66,667.23 plus interest from the date such amount became due and owing.

IT IS SO ORDERED.