**BRANNON et al., Appellants,**

**v.**

**RINZLER et al., Appellees.**

[Cite as *Brannon v. Rinzler* (1991), 77 Ohio App.3d 749.]

Court of Appeals of Ohio,
Montgomery County.

Nos. 12219, 12310.

Decided Oct. 18, 1991.

750

*Howard P. Krisher,* for appellants.

*Ira Rubin,* for appellees.

*Gary W. Gottschlich,* for defendants.

---

BROGAN, Judge.

The appellants, Dwight D. Brannon, Lytton F. Crossley, and S. Richard Reece, appeal the trial court's judgment granting summary judgment to the group of appellees known as Winsted Operations, Dorset Marine Operations, MS Barge, Hugh Levey, Stuart Becker, and Mystic Marine Towing Partners ("MMTP") (hereinafter collectively "Winsted"); and the group of appellees known as Rinzler, Rinzler & Associates, Inc. and MT Associates ("MTA") (hereinafter collectively "Rinzler"), and denying summary judgment to appellants. The trial court's memorandum decision stated that MTA is a general partnership, that each appellant's interest in MTA was that of a general partner and not a security, that MTA was an institutional investor and exempt from R.C. 1707.03(D) registration requirements, that the contracts between the individual general partners in forming MTA is not a sale or contract for sale under R.C. Chapter 1707, that there is no derivative cause of action by appellants against MMTP or any of the "other defendants" by virtue of MTA's purchase of an interest in MMTP, and that each appellant is obligated on his promissory note and guarantee to MTA for 1986.

The three appellants set forth seven assignments of error, alleging that the lower court erred: (1) in overruling appellants' motion for summary judgment

because the investment involved was a security, (2) in sustaining defendants' motion for summary judgment on the issue of whether or not appellants were sophisticated investors, (3) in disregarding appellants' affidavits filed in support of their motion for summary judgment, (4) in finding MTA was an institutional investor and that the transaction was exempt from registration, (5) in holding that there was no derivative cause of action for the plaintiffs to assert by reason of their participation in MTA, (6) in refusing to permit plaintiffs to amend their complaint, and (7) in sustaining the defendants' motion for summary judgment on their counterclaims for the last installments due on plaintiffs' promissory notes.

In 1982, the three appellants purchased interests in a tax shelter type investment known as MTA Associates. MTA was a general partnership formed for the purpose of, "purchasing and owning various securities and other investments, including limited partnership interests in a Missouri limited partnership called "Mystic Marine Towing Partners." The MTA general partnership was comprised of the three named appellants as well as eight other investors not party to this lawsuit. The partnership agreement named Rinzler & Associates as managing agent to care for the partnership's business affairs. Each of the above named appellants individually executed a partnership agreement, a subscription agreement, and four promissory notes. All the promissory notes were paid except for the 1986 note which remains unpaid.

Between 1982 to 1986, only appellant Brannon exhibited any concerns regarding this investment. However, all of his questions, including those pertaining to the investment being a general partnership, were resolved by letter dated June 29, 1983. There were no further communications between any of the parties until April 1986, when MMTP made a capital call upon MTA, and MTA in turn passed the call to the general partners.

Appellants allege in their first assignment of error that the trial court erred in not recognizing substance over form and in overruling appellants' motion for summary judgment seeking rescission. Appellants contend that the "investment" in this case was a security that had to be registered and could only be sold by a licensed broker. Both Winsted and Rinzler contend that the general partnership interests are not securities as defined by the Ohio Revised Code.

R.C. 1707.01(B) defines a "security" as, "any certificate or instrument which represents title to or interest in, or is secured by any lien or charge upon, the capital, assets, profits, property, or credit of any person. * * * It includes * * * subscription rights * * * promissory notes, all forms of commercial paper, evidences of indebtedness, bonds, debentures * * * any investment

contract, any instrument evidencing a promise or an agreement to pay money
* * * *."

Appellants state that because they had "no expertise in nor control over the enterprise controlling and consuming their at-risk capital * * * their interests in MTA and MMTP were clearly securities subject to registration * * * [and] could only be sold through licensed dealers." Appellants cite numerous cases in support of their argument; however, few of the cases cited interpret R.C. Chapter 1707, the Ohio Code Chapter in question, but instead are fact-specific interpretations of the Federal Securities Act.

In determining Ohio's statutory definition of a security, Ohio case law must be scrutinized, rather than case law interpreting other state or federal statutes. In *State v. George* (1975), 50 Ohio App.2d 297, 303, 4 O.O.3d 259, 262, 362 N.E.2d 1223, 1228, the Court of Appeals for Franklin County adopted the four-prong test set forth in *State v. Hawaii Market Ctr.* (1971), 52 Hawaii 642, 649, 485 P.2d 105, 109, in determining whether an investment contract, and thus a security, exists. The court found that a security exists when:

"(1) an offeree furnishes initial value to an offeror, and

"(2) a portion of this initial value is subjected to the risks of the enterprise, and

"(3) the furnishing of the initial value is induced by the offeror's promises or representations which give rise to a reasonable understanding that a valuable benefit of some kind, over and above the initial value, will accrue to the offeree as a result of the operation of the enterprise, and

"(4) the offeree does not receive the right to exercise practical and actual control over the managerial decisions of the enterprise."

While the first three prongs of this test are met here, the last one is not. The evidence clearly shows that the appellants did retain practical and actual control over certain managerial decisions. The partnership agreement states in paragraph seven that, "the partners may remove the managing agent with or without cause, by written consent of partners holding at least three-quarters of the then capital accounts of the partnership." Additionally, "the managing agent shall have the right to withdraw as managing agent of the partnership with the consent of partner's holding at least a majority of the then capital accounts of the partnership." Lastly, the written consent of partners holding at least three-quarters of the then capital accounts of the partnership will be sufficient to dissolve and liquidate the partnership.

Contra to appellants' argument, the Ohio case of *J & S Enterprises v. Warshawsky* (N.D.Ohio 1989), 714 F.Supp. 278, is almost on point with the facts in the present case. In *J & S Enterprises*, two persons formed a

general partnership in order to invest in real property outside Ohio. Warshawsky purchased a one-third interest in the partnership; the bills of sale were executed in Ohio. *Id.* at 279. The partnership dissolved, with Warshawsky still owing unpaid contributions. Warshawsky defended his failure to pay contending that J & S had failed to register its partnership interest as a security. J & S argued in support of its motions for summary judgment that Warshawsky's partnership interest was not a security and thus not required to be registered.

In analyzing the facts, the court pointed out that what J & S sold to Warshawsky was not an interest in the foreign real estate but an interest in the partnership itself. *Id.* at 280. The court distinguished the two interests, stating that Warshawsky acquired a one-third interest *in* the general partnership while the *partnership* acquired the South Carolina real estate.

The court further stated that the R.C. 1707.01 description of "security" does not specifically include a general partnership. The court concluded that an interest in a general partnership was purposely and specifically excluded from the definition of "security." The partnership agreement in the instant case clearly states that, "partners shall engage in business, each as a general partner." Additionally, the court relied on the four-prong test set forth in *State v. George, supra,* and stated that in order to qualify as a security, the investor could not have the right to exercise any managerial control.

Here, the general partnership agreement clearly gives the appellants certain rights as to managerial control. These rights are sufficient to satisfy the last prong of the test and find the investment to not be a security under Ohio law. While appellants rely on several cases, they have not cited any Ohio cases contradicting the holding in *J & S Enterprises.*

█ Appellants' second assignment of error alleges that the trial court erred in sustaining appellees' motion for summary judgment on the issue of whether or not the appellants were sophisticated investors. The appellants contend that at the time they entered into the partnership agreement, they had a minimal degree of expertise in the investment field.

It is undisputed that all three appellants signed the MTA subscription agreement, which clearly sets forth in the first paragraph of the first page:

"I represent and warrant that I have either (i) had experience in business enterprises or investments entailing risks of a type or to a degree substantially similar to those entailed in an investment in the partnership or (ii) obtained independent financial advice with respect to my investment in the partnership interests. I further represent that I am familiar with the business and operations of the Partnership and the terms and conditions of the partnership

agreement and am aware of the degree of risk involved in making an investment in the partnership interests."

Dwight Brannon, an experienced attorney with a flourishing Dayton practice, admitted in his deposition that he made "many previous investments" prior to the one in question, beginning in the late 1970s. When asked if he had read the MTA partnership agreement he had signed and in which he invested over $100,000, Brannon admitted that, "I don't know if I had an opportunity to read them or not."

S. Richard Reece has been associated with the NCR corporation for over ten years and is currently Vice–President and Treasurer. Reece holds an MBA in marketing from Harvard College and admits to previous experience dealing with stocks. Reece admits that he does not recall reading the above-cited section of the partnership agreement dealing with previous investing experience. He also admits that although he signed the subscription and partnership agreements, the statements pertaining to his previous investing experience were not true and correct at the time he signed it, as he had not received any independent financial advice nor did he have prior experience in such investments.

Lytton Crossley, president of Lytton, Inc., also admits that he did not read the documents labeled "Reece Exhibit 2," consisting of MMTP's summary of the offering, before he executed the subscription agreement and wrote the check for his one-quarter interest.

The court in *Kiel v. Circuit Design Technology, Inc.* (1988), 55 Ohio App.3d 63, 66, 562 N.E.2d 517, 520, quoting 17 Ohio Jurisprudence 3d (1980) 447–448, Contracts, Section 18, stated that:

" 'It is a general rule as to the binding effect of contracts that in the absence of fraud or mutual mistake, a party who executes a written contract cannot say that he was ignorant of its contents and escape liability. * * * It is a well-established principle that it is the duty of every person who enters into a contract, to learn of its contents before he signs it. * * * ' "

The evidence clearly shows that each of the appellants had the opportunity to review all the documents relating to the partnership and seek financial advice before signing them. However, all three appellants admit to signing the documents without fully reading them. For these reasons, the appellants' second assignment of error is overruled.

█ Appellants' third assignment of error alleges that the lower court erred to the plaintiffs' prejudice in disregarding their affidavits. Both Winsted and Rinzler contend that the court's exclusion was harmless, as it did not give rise to a genuine issue of material fact, and was therefore proper. The

trial court's memorandum decision states that the affidavits submitted by the appellants did not meet the personal-knowledge requirement of Civ.R. 56(E). However, these documents were considered and reviewed to the extent that facts stated therein were corroborative of a fact established by other permissible evidence.

Civ.R. 56(E) states in pertinent part that "supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein * * *."

"Personal knowledge" is defined as, "[k]nowledge of the truth in regard to a particular fact or allegation, which is original, and does not depend on information or hearsay. Personal knowledge of an allegation in an answer is personal knowledge of its truth or falsity; and if the allegation is a negative one, this necessarily includes a knowledge of the truth or falsity of the allegation denied." Black's Law Dictionary (6 Ed.1990) 873, citing *Hidalgo v. General Fire & Cas. Co.* (La.App.1971), 254 So.2d 493, 496.

■ According to Ohio case law, statements contained in affidavits must be based on personal knowledge and cannot be legal conclusions. *State v. Licsak* (1974), 41 Ohio App.2d 165, 169, 70 O.O.2d 325, 327, 324 N.E.2d 589, 593.

■ The statements set forth in the appellants' form affidavits do not fulfill the personal-knowledge requirement of Civ.R. 56(E). On the contrary, the affidavits contain hearsay statements and legal conclusions, as well as statements contradictory to written documents and depositions. The incorporation of the allegations set forth in the complaint and the statement of facts results in the appellants restating legal conclusions. Neither can the rest of the appellants' averments be categorized as personal knowledge, as they depend on hearsay or other information or are contradictory to statements set forth in the documents the appellants admit they did not read. The trial court properly found that the appellants' affidavits were not based on personal knowledge; thus, appellants' third assignment of error is overruled.

■ Appellants allege in their fourth assignment of error that the lower court erred when it found MTA to be an institutional investor pursuant to R.C. 1707.01(S) and the transaction exempted from registration. Appellees argue that MTA clearly fits within the statutory definition of an institutional investor. An "institutional investor" is " * * * any corporation * * * any association engaged, as a substantial part of its business or operations, in purchasing or holding securities * * *. 'Institutional investor' does not

include any business entity formed for the primary purpose of evading sections 1707.01 to 1707.45 of the Revised Code." R.C. 1707.01(S).

R.C. 1707.03(D) states that a sale to the issuer, to a dealer, or to an institutional investor is exempt.

"As used in this section, 'exempt' means that * * * transactions in securities may be carried on and completed without compliance with sections 1707.08 to 1707.11 of the Revised Code." R.C. 1707.03(A).

Appellants first argue that MTA is not an institutional investor, that MMTP played an important role in inducing appellants to invest in its securities and that because they were unsophisticated investors they were entitled to protection under the statute.

To fit within the definition of "institutional investor," MTA must be an association pursuant to R.C. 1707.03. The evidence shows that MTA was formed for the purpose of purchasing securities and other investments (MTA partnership agreement). Moreover, the description of MTA's purpose for formation, which all three appellants admit to not having read, clearly puts MTA within the statute's definition of "association" for the purpose of being an institutional investor. As to appellants' contention that they are unsophisticated investors, the evidence discussed in assignment of error two shows the contrary. Appellants' fourth assignment of error is overruled.

■ The appellants allege in their fifth assignment of error that the lower court erred in finding that there was no derivative cause of action for the plaintiffs to assert by reason of their participation in MTA. R.C. 1707.43 states that:

"Every sale or contract for sale made in violation of Chapter 1707. of the Revised Code, is voidable at the election of the purchaser. The person making such sale or contract for sale, and every person who has participated in or aided the seller in any way in making such sale or contract for sale, are jointly and severally liable to such purchaser * * *."

Appellants claim that they have a derivative cause of action against MMTP because of MTA's purchase of an interest in MMTP. Appellants contend that because MMTP provided Rinzler with information relative to the investment and disseminated its circular in Ohio, such action falls within the statute, which only requires that MMTP have minimal contact, or "anything to do" with the sale, rather than direct contact. Appellee Winsted argues that appellants lack standing to assert any claims MTA might have against MMTP, and that any claim against MMTP arising from the sale of the partnership interests belong to MTA, not the individual appellants.

However, there is no evidence that MMTP participated in any sale of securities by MTA to the plaintiffs. First, as discussed in the first assignment of error, it has been determined that the interests in MTA are not securities, thus taking these actions outside of the statute. Secondly, to parallel the holding in *Warshawsky, supra,* MTA, the partnership, purchased the limited partnership interests in MMTP, not the appellants. Also, it is undisputed that no direct contact took place between MMTP and the appellants. Thus, it cannot be said that MMTP participated in the sale of the MTA interests. Appellants' fifth assignment of error is overruled.

Appellants' sixth assignment of error alleges that the lower court erred in refusing to permit the appellants to amend their complaint. Both appellees argue that Judge Rumer's denial of appellants' motion to amend was not an abuse of discretion. The lower court found that, "at best, the amended allegations which would relate back under current law would be those involving violations of Chapter 1797 of the Revised Code as alleged in plaintiffs' original and supplemental complaint[s]."

■ Civ.R. 15(A) states the rule for amended and supplemental pleadings:

"A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar he may so amend it at any time within twenty-eight days after it is served. Otherwise, a party may amend his pleading only by leave of court or by written consent of the adverse party. Leave of court shall be freely given when justice so requires."

Because this rule grants the court the discretion to grant a party's motion to amend a pleading, appellants must show that the court's decision to deny the pleading was an abuse of discretion. "Abuse of discretion connotes more than an error of judgment; rather, it implies a decision that is without reasonable basis and is clearly wrong." *Prime Kosher Foods, Inc. v. Bur. of Emp. Serv.* (1987), 35 Ohio App.3d 121, 122, 519 N.E.2d 868, 870.

The new claims the appellants sought to include were "common law fraud, fraud under securities act, conversion, negligent and/or intentional misman- agement, violations of the Ohio RICO statute, breach of fiduciary duty under the Ohio partnership statute, and any claims the plaintiffs could prosecute under federal law which the court would have jurisdiction to hear."

We find no abuse of discretion. In their last assignment of error, appel- lants allege that the lower court erred in sustaining the defendants' motion for summary judgment on their counterclaims for the last installments due.

Appellants contend that the entire transaction was illegal due to the fact that the partnership interests were securities, giving the appellants as purchasers, the right to rescind.

The evidence shows that the lower court properly found the interest not to be securities and exempt from registration. For the foregoing reasons, appellants' final assignment of error is overruled.

Appellees also contend that the appellants' causes of action were time barred by the running of the applicable statute of limitations. R.C. 1707.43 states that:

"No action for the recovery of the purchase price as provided for in this section, and no other action for any recovery based upon or arising out of a sale or contract for sale made in violation of Chapter 1707. of the Revised Code, shall be brought more than two years after the plaintiff knew, or had reason to know, of the facts by reason of which the actions of the person or director were unlawful, or more than four years from the date of such sale or contract for sale, whichever is the shorter period."

The lower court found that the claims the appellants sought to add were known, or should have been known, by the appellants long ago. This is evident from the MMTP Summary of Offering, which states that:

"The following summary describes an offering of limited partnership units which are being offered pursuant to exemptions from registration under the federal and certain state securities law to certain accredited investors."

Additionally, the evidence shows that since the partnership interests were not securities, R.C. 1707.43 is not applicable.

In conclusion, the lower court properly ruled on the motions for summary judgment. The trial court's judgment is hereby affirmed.

*Judgment affirmed.*

WILSON and WOLFF, JJ., concur.