COX, Appellant,

v.

LEMONDS, Appellee.

[Cite as *Cox v. Lemonds* (1995), 107 Ohio App.3d 442.]

Court of Appeals of Ohio,
Second District,
Montgomery County.

No. 15271.

Decided Nov. 17, 1995.

*Alan A. Biegel,* for appellant.

*Joseph P. Moore,* for appellee.

FAIN, Judge.

Plaintiff-appellant Craig S. Cox appeals from a judgment of the trial court adopting a referee's report and recommendation and dismissing Cox's complaint against defendant-appellee M. Larry Lemonds. Cox contends that the trial court erred in concluding that the partnership interest that Cox purchased from Lemonds was not a "security" within the meaning of R.C. Chapter 1707 and that the sale of the interest could not be rescinded pursuant to R.C. 1707.43. Specifically, Cox contends that the partnership interest was a "security" because, as a matter of law, he did not obtain any right to actual or practical control over the management of the business.

We conclude that the trial court properly determined that Cox possessed a right to actual and practical control over the management of the partnership's business and that the partnership interest purchased by Cox was not a security entitled to the protections set forth in R.C. 1707.43. Accordingly, the judgment of the trial court is affirmed.

Plaintiff-appellant Craig S. Cox is a real estate salesperson. Defendant-appellee M. Larry Lemonds is a real estate broker. In August 1992, Lemonds obtained franchise rights from ReMax of Southern Ohio, Inc. to operate a real estate brokerage franchise in Beavercreek, Ohio, under the name of ReMax All Star Realty ("All Star Beavercreek"). On May 12, 1993, Cox and Lemonds signed an agreement for Cox to purchase a fifty-percent partnership interest in All Star Beavercreek for $35,000. On July 1, 1993, Cox and Lemonds signed another agreement, which set forth the essential terms of the partnership.

After operating for a short period beginning in the spring of 1993, All Star Beavercreek ultimately failed and went out of business in December 1993. At no

time during the course of their business relationship did Lemonds register the sale of the business interest to Cox with the Division of Securities of the Department of Commerce of Ohio. Throughout the course of the partnership, Cox paid a total of $26,645 to Lemonds toward his share of the partnership.

On July 14, 1994, Cox initiated the present action against Lemonds to recover the $26,645 that he had paid to Lemonds. Cox sought to recover his investment based on three independent theories. First, Cox argued that he was entitled to rescind the contract for the sale of the partnership interest pursuant to R.C. 1707.43 because it was a sale of an unregistered security. Next, Cox argued that Lemonds failed to convey the agreed partnership and that he was entitled to a refund based on a failure of consideration. Finally, Cox argued that he did not receive anything of value in exchange for his $26,645 and that he was entitled to a refund based on a want of consideration. Lemonds counterclaimed against Cox for the $8,355 balance of the $35,000 that Cox agreed to pay.

On October 3, 1994, the trial court referred the matter to a referee. After conducting a hearing, the referee recommended that Cox's complaint be dismissed in favor of Lemonds and that judgment be entered in favor of Cox on Lemonds's counterclaim. Neither party filed objections to the referee's report and recommendation. On April 21, 1995, the trial court adopted the report and recommendation and entered judgment accordingly.

From the judgment of the trial court, Cox appeals.

Cox's sole assignment of error is as follows:

"The lower court erred in concluding that the partnership interest sold by the appellee to the appellant was not a security pursuant to Chapter 1707 of the Ohio Revised Code which could be rescinded by the appellant under the provisions of § 1704.43 [sic] O.R.C."

R.C. Chapter 1707 governs the sale of all securities in Ohio. R.C. 1707.44 provides that "[n]o person shall knowingly and intentionally sell * * * any security * * * that has not been registered * * *." R.C. 1707.43 provides that "[e]very sale or contract for sale made in violation of Chapter 1707. of the Revised Code, is voidable at the election of the purchaser."

At the trial level, Cox argued that the fifty-percent partnership interest in All Star Beavercreek that he purchased from Lemonds was a "security" within the meaning of R.C. 1707. Therefore, Cox argued, because Lemonds failed to register the sale of the security interest in the real estate business according to the requirements of R.C. Chapter 1707, he was entitled to void the sale and to a refund of his money.

When addressing the propriety of Cox's argument, in order to determine if Cox had purchased a "security" within the meaning of R.C. 1707.43, the referee applied the four-prong definition of a security adopted by this court in *Brannon v. Rinzler* (1991), 77 Ohio App.3d 749, 753, 603 N.E.2d 1049, 1052. That definition provides that a security exists when:

"(1) an offeree furnishes initial value to an offeror;

"(2) a portion of this initial value is subjected to the risks of the enterprise;

"(3) the furnishing of the initial value is induced by the offeror's promises of representations which give rise to a reasonable understanding that a valuable benefit of some kind, over and above the initial value, will accrue to the offeree as a result of the operation of the enterprise; and

"(4) the offeree does not receive the right to exercise practical and actual control over the managerial decisions of the enterprise."

The particular issue before the referee in this case was to determine whether Cox had received "the right to experience practical and actual control over the managerial decisions of the enterprise." After conducting a hearing on the matter, the referee recommended the following factual findings and legal conclusions:

"Plaintiff was intimately involved with the daily operations of All Star Beavercreek, including managerial functions, even though Plaintiff was not office manager. All Star Beavercreek had a bank operating account and a trust account, on which Plaintiff was listed as a signatory. Plaintiff sent out letters attempting to attract real estate salespersons. He interviewed prospective sales associates. Plaintiff had meetings in which he, the office manager, Cummins, and the Defendant discussed the business. Plaintiff instituted some policies and had input on office management. He supervised the receptionist, Munt. At Plaintiff's initiative, the office manager, Cummins, was terminated. Plaintiff had a key to the Beavercreek Office.

" * * *

"Looking to both the conduct of the parties and the language of the agreement between them, it is clear that Plaintiff enjoyed control over the enterprise. Plaintiff testified that he believed he was a one-half owner in All Star Beavercreek. His conduct revealed as much. Plaintiff represented that he was an owner to the public and to the employees and associates of All Star Beavercreek. Plaintiff indicated the same on newsletters and business cards. Furthermore, Plaintiff testified that the success of the All Star Beavercreek franchise was contingent upon the number of productive sales agents and the level of sales generated by All Star. Plaintiff had primary responsibility for this activity, the most critical aspect of the business. Plaintiff conducted an office policy meeting

and asserted that the policy would be as he set out. Plaintiff was viewed by the employees and associates as having the authority in the office, even though he was not the office manager. Plaintiff had sufficient involvement and responsibility that he could order a new paycheck be drawn for an employee who did not receive a check.

"With respect to the agreement on July 1, 1993, the control enjoyed by Plaintiff is also evident. The parties agreed to consult with each other on *all* matters concerning the company with a tiebreaking power being given to Defendant. This allows a substantial amount of managerial control by Plaintiff. More importantly, it makes Plaintiff privy to the daily and long-term machinations of All Star Beavercreek. Furthermore, both partners could recruit and interview associates. Plaintiff's ability to control an integral part of the business such as recruiting and hiring associates gave him an ascertainable level of control over All Star. Not only was Plaintiff involved, but it could even be said that the success of All Star was nearly completely contingent upon Plaintiff's actions. Plaintiff did not enjoy the level of control held by Defendant, however, under *Brannon,* he had practical and actual control. Plaintiff certainly was involved enough in the enterprise to remove himself from the protective shield of the statute. The interest purchased by Plaintiff is not a security under R.C. 1707.01(B)." (Emphasis *sic.*)

As mentioned in Section I, neither party filed objections to the referee's report and recommendation, and the trial court adopted it in its entirety. Because Cox failed to raise objections to the report and recommendation to the trial court, Cox cannot assign as error the trial court's adoption of the referee's factual findings. Civ.R. 53(E)(6). However, the failure to file objections to the referee's report and recommendation does not preclude Cox from raising errors of law on appeal. See, *e.g., State ex rel. LaMar v. Stabile* (1993), 90 Ohio App.3d 54, 627 N.E.2d 1076.

Accordingly, Cox has presented a very narrow issue for review on appeal. While recognizing that he cannot dispute the trial court's adoption of the referee's factual findings, Cox argues that the trial court erred as a matter of law in concluding that his interest in All Star Beavercreek was not a "security" entitled to the protections afforded in R.C. 1707.43.

Cox first asserts that, regardless of whatever control over the business he may have *imagined* himself to have had, or may have *appeared* to have exercised, the terms of the agreement did not grant him the *right* to exercise practical and actual control over the business, as required by the fourth prong of the *Brannon* definition of a security. Cox asserts that the terms of the agreement did not provide him the *right* to manage or to control the business because the agree-

ment granted Lemonds the ultimate authority over all managerial decisions. We do not agree.

While it is true that the terms of the agreement provided that Lemonds had the "tie-breaking vote" on all managerial matters, it does not necessarily follow that the terms of the agreement denied Cox any right to exercise some amount of control over the managerial matters of the business. The referee found that the terms of the partnership agreement were not fully integrated with the writings signed by Cox and Lemonds, and accordingly relied upon parol evidence concerning the parties' conduct. The evidence of the parties' conduct supports the conclusion that the parties understood that Cox had the right to exercise significant control over the daily operations of the partnership. Moreover, the written terms of the agreement specifically granted Cox the right to provide input on all managerial matters and the right to recruit and interview sales associates. The fact that Lemonds may have shared these rights and, in some regards, may have had the ultimate authority on the matters does not negate the rights enjoyed by Cox to exercise some practical and actual control over managerial decisions.

Next, Cox asserts that by operation of the Ohio Real Estate Broker's Act and Lemonds's licensing advantage, he was denied the right to exercise any control over managerial decisions.

Pursuant to the Ohio Real Estate Broker's Act, a real estate salesperson is only licensed to sell real estate in Ohio when associated with a licensed broker. R.C. 4735.13 provides:

"(B) The license of each real estate salesman shall be mailed to and remain in the possession of the licensed broker with whom he is or is to be associated until canceled or until the salesman leaves the broker. The broker shall keep each salesman's license in a way that it can, and shall on request, be made immediately available for public inspection at the office or place of business of the broker. * * * [I]mmediately upon the termination of the association of a real estate salesman with the broker, the broker shall return the salesman's license to the superintendent of real estate for cancellation."

Cox contends that, according to R.C. 4735.13(B), Lemonds had the ability to "send back" Cox's sales license and revoke his ability to sell real estate for All Star Beavercreek. Based on this authority, Cox asserts that, by operation of law, Lemonds had absolute control over the operation and management of all business matters and that he had none.

We do not agree with Cox's contention that his right to exercise control over managerial matters of the partnership is precluded, as a matter of law, by Lemonds's *de facto* ability to "send back" his sales license pursuant to R.C.

4735.13.  The partnership between Lemonds and Cox was formed as a business enterprise for the sale of real estate, and the key to the success of the operation was to maintain high volume sales.  Although Lemonds may have had the statutory ability to send back Cox's sales license, to do so would have destroyed Cox's ability to sell real estate in association with All Star Beavercreek and would have had a negative impact on the business.  Lemonds's ability to send back Cox's sales license is not substantially different from the power that each partner had to terminate their association.  The fact that either partner had the power to terminate the partnership could not be deemed to have vitiated the ability of the other to exercise practical and actual managerial control over the affairs of the partnership while it was in business; to conclude otherwise would lead to the absurd conclusion that none of the only partners had the right to manage the enterprise.

We conclude that Lemonds's ability to send Cox's license back did not prevent Cox, as a matter of law, from exercising any practical control over the management of the partnership while it was in business.  We find this conclusion to be especially true in light of the fact that the trial court adopted the referee's finding that the "statutory option was never *used* or *perceived* as a bargaining tool capable of restricting Plaintiff's control of All Star Beavercreek."  (Emphasis added.)

We conclude that the facts as found by the trial court clearly indicate that Cox maintained some practical and actual control over certain managerial decisions.  Cox participated in the hiring and firing of office and sales personnel.  Cox was also instrumental in both setting and enforcing office policy.  The terms of the agreement expressly guaranteed Cox's right to contribute his input on all matters concerning the management of the business.  Additionally, Cox possessed autonomous control over the management of his own selling responsibilities.  We cannot say that the trial court erred in concluding that Cox possessed the right to control managerial decisions of the business and that Cox did not purchase a "security" within the meaning of R.C. 1707.  Accordingly, we conclude that the trial court did not err in concluding that Cox not was entitled to rescind the sale according to R.C. 1707.43.

Cox's sole assignment of error is overruled.

*Judgment affirmed.*

GRADY and FREDERICK N. YOUNG, JJ., concur.