[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
In these consolidated cases, Joseph Pierce appeals from judgments of the Dayton Municipal Court awarding damages and attorney's fees to appellees on their actions for refund of security deposits and breach of lease agreements. These cases arose out of two sequential lease agreements in which Pierce agreed to lease the same house to certain of the appellees, first for the duration of the summer semester at the nearby University of Dayton, then for the length of the regular school year. In both cases, the trial court granted summary judgment against Pierce on the grounds that he had constructively evicted the appellees from the house by maintaining uninhabitable conditions. We affirm the judgment with regard to the first lease, because in opposing the summary judgment motion, Pierce failed to rebut the appellees' assertions that the residence was uninhabitable for the duration of the first lease. With regard to the second lease, however, we reverse the judgment below. Evidence that showed uninhabitable conditions before the second lease's term began did not support the court's determination of constructive eviction. Case Number 17168, Abdoo v. Pierce, therefore, is reversed, in part, and remanded for further proceedings consistent with this opinion.
 I.
On March 7, 1993, Appellant Pierce entered into two agreements to lease the house he owned at 31 Evanston Avenue in Dayton, Ohio. In the first agreement, Pierce leased the house to appellees Erin Harpel and Amy Danielski for the length of the summer term at the University of Dayton, from May 5, 1993 until August 1, 1993. In the second agreement, Pierce leased the house to appellees Danielski, Abdoo, Bishop, Hourigan, Lally, and Shaw for the length of the 1993/1994 school year, which ran from late August, 1993 until early May, 1994.
Harpel and Danielski began moving into the house on May 2, 1993. Upon entering the house, they discovered a severe cockroach infestation. On May 3, 1993, they informed Pierce that conditions in the house rendered it uninhabitable. On May 11, 1993, the summer tenants reported their problems to the City of Dayton Housing Inspector. An investigation of the premises on May 19 led to citations for insect infestation, leaking pipes, an unsafe stove, exposed electrical wiring and the storage of old appliances improperly stored in the back yard. In addition, inspectors from Dayton Power and Light detected gas-leaks in the house from the furnace and stove. Because of those leaks, appellants had to leave the premises.
On June 2, 1993, Harpel and Danielski informed Pierce that, unless the problems with house were remedied by June 6, they would consider themselves constructively evicted. On June 6, finding the problems unresolved, Harpel and Danielski secured alternative housing.
Sometime during the summer, Denise Abdoo, one of the tenants for the following school year spoke with Danielski. Danielski told her about the condition of the house. In a letter dated June 10, Abdoo relayed her concerns to Pierce about the condition of the house. On June 26, Abdoo, together with her fellow tenants Bishop and Lally, traveled to Dayton to investigate the situation. They also encountered evidence of a severe roach infestation, as well as leaky pipes, the presence of abandoned appliances, and other instances of untidiness. As a consequence, the tenants under the second lease made alternative housing arrangements for the school year.
On July 28, 1993, Harpel and Danielski filed suit against Pierce in the small claims court. They sought $1,500 in return of rent payments and a security deposit. Pierce counterclaimed for $8,000 for breach of contract and contractual interference. By Pierce's motion, the case was transferred to the Dayton Municipal Court because it exceeded the monetary jurisdiction of the small claims court. By leave of court, Danielski filed an amended complaint asking for $5,000 and attorney's fees.
Abdoo, Bishop, Hourigan, and Shaw filed suit against Pierce on November 29, 1993. Each sought return of their share of the security deposit, $250.00 each. Each plaintiff also sought $2,100 in rent payments they had already made, except for Abdoo had who had stopped payment on her check. These plaintiffs also asked for other damages and attorney's fees. Pierce countersued for $10,000 in claimed lost rents and damages from slander and libel.
The municipal court referred both cases to a referee. In the first case, the referee recommended that both Harpel's and Danielski's motions for partial summary judgment be granted on their complaints and on Pierce's counterclaim. In a report dated April 21, 1995, the referee concluded that the summer tenants had been constructively evicted and no genuine issues relating to Pierce's liability existed for trial. The trial court adopted the report of the referee on July 18, 1995, and instructed the referee to hold a hearing on the tenants' damages.
In the second case, the referee recommended granting summary judgment in favor of appellees Abdoo, Bishop, Hourigan, and Shaw. That report was also dated April 21, 1995. The referee determined that the school-year tenants deserved summary judgment for the same reasons that the summer tenants did. The trial court also adopted this report on July 18, 1995 and ordered that a hearing be conducted on damages.
A single damages hearing for both cases was held before a magistrate on December 14, 1995. In the first case, the magistrate awarded Harpel $905.00 plus $500 in attorney's fees, and Danielski $1,781.32 in damages plus $2,289.79 in attorney's fees. In the second case, the magistrate awarded Denise Abdoo $250.00 and the other tenants $2,350.00 each. In addition, these litigants received $3,911.25 in attorney's fees. After considering Pierce's objections to the decisions of the magistrate in both cases, the trial court adopted the decisions on March 24, 1998.
 II.
In a single assignment of error, Pierce asserts that:
 THE TRIAL COURT ERRED IN RULING THAT A CONSTRUCTIVE EVICTION OCCURRED WITH RESPECT TO BOTH LEASE TERMS IN QUESTION.
 The referee granted summary judgment to the appellees in both cases on the basis that a constructive eviction occurred. Pierce assigns error in that determination.
An appellate court reviews a grant of summary judgment denovo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. Summary judgment is appropriate only if (1) "no genuine issue of material fact" exists, (2) "the moving party is entitled to judgment as a matter of law," and (3) it appears from the record that "reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made." Civ.R. 56(C). The party seeking summary judgment must inform the court of the basis for the motion and identify elements in the record that show an absence of any issue of material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280,293, 662 N.E.2d 264. The non-moving party then has a reciprocal burden of producing evidence to show such issues exist. See id.
A constructive eviction occurs when some act of interference by the landlord compels the tenant to leave. 65 Ohio Jurisprudence 2d (1996) 190, Landlord and Tenant, Section 173. Premises made uninhabitable by some wrongful act or omission of the landlord may be grounds for a constructive eviction, provided the tenant actually quits the premises. See 65 Ohio Jurisdiction 2d (1996) 193 Landlord and Tenant, Section 176; see also Katz v.Comisar (1930), 28 Ohio Nisi Prius (N.S.) 10, 11 (affirming a jury verdict that found a vermin infestation — specifically, bed bugs — constituted a constructive eviction).
R.C. 5321.07 also gives tenants certain statutory rights akin to the constructive eviction doctrine. It provides, in relevant part, as follows:
 (A) If a landlord fails to fulfill any obligation imposed upon him by section 5321.04 of the Revised Code, other than the obligation specified in division (A)(9) of that section, or any obligation imposed upon him by the rental agreement, if the conditions of the residential premises are such that the tenant reasonably believes that a landlord has failed to fulfill any such obligations, or if a governmental agency has found that the premises are not in compliance with building, housing, health, or safety codes that apply to any condition of the premises that could materially affect the health and safety of an occupant, the tenant may give notice in writing to the landlord, specifying the acts, omissions, or code violations that constitute noncompliance. The notice shall be sent to the person or place where rent is normally paid.
(B) If a landlord receives the notice described in division (A) of this section and after receipt of such notice fails to remedy the condition within a reasonable time considering the severity of the condition and the time necessary to remedy such condition, or within thirty days, whichever is sooner, and if the tenant is current in rent payments due under the rental agreement, the tenant may do one of the following:
* * *
(3) Terminate the rental agreement.
 R.C. 5321.04 lists the duties of a landlord, the breach of which may be grounds for terminating the lease under R.C. 5321.07. These are, in relevant part, as follows:
 (A) A landlord who is a party to a rental agreement shall do all of the following:
 (1) Comply with the requirements of all applicable building, housing, health, and safety codes that materially affect health and safety;
 (2) Make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition;
* * *
 (4) Maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating, and air conditioning fixtures and appliances, and elevators, supplied or required to be supplied by him;
* * *
 Breach of these statutory duties, if the breach is substantial and the tenant quits the premises, may constitute a constructive eviction. See, e.g., Schutte v. Nicholson, (Feb. 5, 1992), Hamilton App. No. C-910261, unreported, at 2.
 A. The Summer Lease
In the first case, involving the summer lease, appellees Harpel and Danielski established by affidavit that the lease premises were severely infested with roaches, and that the house had leaking pipes, exposed electrical wiring, and gas leaks in the stove and furnace. The affidavits stated that Pierce received notice of the problem beginning on May 3, 1993 and the premises were evacuated on May 17, 1993. The affidavits also showed that Pierce had been cited with various health and safety violations on May 19, and the problems were not resolved by June 6. These averments were sufficient to prove the tenants' claims that the house was uninhabitable and that they had been constructively evicted.
In opposing the summer tenant's summary judgment motions, Pierce failed to provide any supporting affidavits or other evidence that could be considered under Civ.R. 56. Rule 56(E) mandates that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rely rest on the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Because Pierce failed to bring forward any evidence that contradicted the tenants' version of events, the referee was required to accept the affidavits as true. See Stemenv. Shibley (1982), 11 Ohio App.3d 263, 268. In light of those affidavits, no genuine issue of fact remained for trial on the question of constructive eviction. Thus, the court did not err in granting summary judgment on that question.
Similarly, no issues of fact remained in regard to Pierce's counterclaim against Harpel and Danielski. The determination that a constructive eviction occurred prevented Pierce from pursuing damages from lost rent. Pierce offered no operative facts to support any other of his claims. See Ohio Poly Corp. v. Packagingand Handling Supplies Co. (1988), 44 Ohio App.3d 88, 91.
Pierce points to evidence from the damages hearing in an attempt to prove that issues of fact did exist with regard to constructive eviction. By the time of the damages hearing, however, that question had already been adjudicated. Testimony given during the damages hearing had no relevance to the question of whether the court properly granted summary judgment. Therefore, appellant's assignment of error is overruled to the extent that it disputes the awards in favor of appellees Harpel and Danielski.
 B. The School-Year Lease
The trial court's judgment in the second case, involving the lease for the school-year, is more problematic. As in the first case, Pierce failed to provide the referee with any affidavits or other evidence that could be considered in summary judgment. Pierce's attorney submitted an affidavit asserting his belief that genuine issues of fact existed. However, putting aside the question of whether the affidavit of a party's attorney could be considered as evidence, such a conclusory affidavit could not establish any operable facts sufficient to prevent a summary judgment motion. See Ohio Poly Corp., 44 Ohio App.3d at 91. Thus, the appellee's version of events was essentially left unrebutted. Nevertheless, even assuming the truth of the school-year tenant's evidence, they failed to show that they could prevail on each element of their claim against Pierce.
The school-year tenants submitted the affidavit of Denise Abdoo in support of their summary judgment motion. That affidavit attested to uninhabitable conditions in the house in a manner similar to the affidavits of Harpel and Danielski in the connected case. The lease term for the second set of tenants, however, did not begin until sometime in late August, 1993. Abdoo's affidavit did not indicate that the uninhabitable conditions she encountered in June, 1993 continued to exist when her lease term began. That showing was necessary for the school-year tenants to show that they were constructively evicted.
Constructive eviction requires that there be an interference with the tenants enjoyment and possession of the leasehold premises and that the tenant actually quit the premises. As logical matter, neither of these events can occur before the tenant actually holds the rights of possession. Cf. BurlingtonDevelopment Co. v. Murphy (Oct. 21, 1994), Geauga App. No. 93-G-1812, unreported, at 5 ("[S]ince appellant was not a lessee in possession of the premises on the date he alleges [the eviction occurred], appellant's claim that he was constructively evicted and not in breach of the lease agreement is erroneous and not supportive of his defense or counterclaim.") Consequently, summary judgment could not have been properly granted in favor of the school-year tenants on the basis of a constructive eviction. Under R.C. 5321.07, the tenants could even have terminated their lease on the first day of its term. Shoemaker v. Whitt (Aug. 28, 1998), Greene App. No. 97CA104, unreported, at 7. Nevertheless, the tenants had to show that some condition meriting termination actually existed or would have existed for some part of their lease term.
Although we hold that a tenant cannot be constructively evicted as a result of conditions existing before her lease term begins, it may be that the tenant can show anticipatory repudiation of the lease by the landlord in circumstances similar to those asserted by the appellees. The Restatement of the Law 2d, Contracts (1981) 277, Section 251 states:
 (1) Where reasonable grounds arise to believe that the obligor will commit a breach by non-performance that would of itself give the obligee a claim for damages for total breach under § 243, the obligee may demand adequate assurances of due performance and may, if reasonable, suspend any performance for which he has not already received the agreed exchange until he receives such assurances
 (2) The obligee may treat as a repudiation the obligor's failure to provide within a reasonable time such assurance of due performance as is adequate in the circumstances of the particular case.
 The school-year tenants could have taken the news about the house's condition during the summer as grounds to believe that Pierce could not or would not provide a habitable premises when their lease term began.
Nevertheless, we are unable to affirm the grant of summary judgment on this ground. Although Abdoo's affidavit provided evidence of a reasonable fear that Pierce would breach the lease agreement and that she made a kind of demand for assurances, it does not show that she gave Pierce a reasonable amount of time to provide such assurances or that he failed to do so.
Abdoo's affidavit did include an averment that Abdoo had contacted exterminators to see if the cockroach infestation could be cured before the lease began. According to the affidavit, several exterminators informed Abdoo that it would take a substantial effort and a substantial period of time to alleviate the infestation. That evidence, however, was insufficient to meet appellees' burden in summary judgment. First, the evidence was based on hearsay. Civ.R. 56(E) requires that, in order to be considered on a summary judgment motion, averments must be made on personal knowledge. For that reason, the court could not properly consider hearsay evidence. See Brannon v. Rinzler (1991),77 Ohio App.3d 749, 756. Second, even if the exterminators' opinions could be considered as they were expressed in the affidavit, they did not state that the infestation would be so severe during the period of maintenance that the premises would be uninhabitable. Only if the premises would have been uninhabitable would there have been a threat of total breach that could be treated as an anticipatory repudiation. See Section 251, supra.
Accordingly, we affirm Pierce's assignment of error with regard to appellees Abdoo, Bishop, Hourigan, and Shaw.[1] The grant of summary judgment on the question of Pierce's liability to these tenants was in error, and this cause is remanded for further proceedings on that question. Furthermore, because the justification for appellees' breach of the second lease agreement is still in question, Pierce's counterclaim for unpaid rent remains undecided and will have to be determined on remand. Pierce has not appealed from the grant of summary judgment in favor of the appellees on any of his other counterclaims against these tenants. Thus, the grant of summary judgment on those claims remains unaffected by this opinion.
 III.
In accordance with the foregoing opinion, the judgment of the Dayton Municipal Court in case number 17163, Harpel v. Pierce, is affirmed. The court's judgment in case number 17168, Abdoo v.Pierce, is reversed and remanded for further proceedings not inconsistent with this opinion.
GRADY, P J., and FAIN, J., concur.
Copies mailed to:
Charles A. Claypool
Charles F. Shane
Lawrence W. Henke, III
Laurence A. Lasky
Hon. John Pickrel
[1] Although Amy Danielski was also a party to the second lease, she was never joined as a party in the second action. In addition, Pierce never pursued a claim against her in the first action for breach of the second lease. Consequently, any liability that she might have had to Pierce was adjudicated entirely in the first action.