**[Cite as *TAP Mgt., Inc. v. Ohio Dept. of Commerce*, 2021-Ohio-4390.]**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| TAP Management, Inc. et al. | : | |
| Appellants-Appellees, | : | |
| | | No. 20AP-445 |
| v. | : | (C.P.C. No. 17CV-6942) |
| Ohio Department of Commerce, Division of Securities, | : | (REGULAR CALENDAR) |
| | : | |
| Appellee-Appellant. | | |

D E C I S I O N

Rendered on December 14, 2021

**On brief:** *Dave Yost*, Attorney General, and *Rachel O. Huston*, for appellant. **Argued**: *Rachel O. Huston.*

**On brief:** *Ice Miller LLP,* and *Matthew L. Fornshell*, for appellee. **Argued:** *Shain Khoshbin.*

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} In this R.C. 119.12 administrative appeal, appellee-appellant, Department of Commerce Division of Securities ("Division"), contends that the Franklin County Court of Common Pleas erred in reversing the "Final Order to Cease and Desist" issued by the Division to the appellant-appellees TAP Management, Inc., Tribbey B Joint Venture, Cody Davis, and Tanner Reyes ("TAP Management"). The Division asserts a single assignment of error with the judgment of the court, arguing that the trial court erred in finding that the certain ownership interests in a business venture were not securities. TAP Management argues that the appeal should be dismissed for lack of jurisdiction, and alternatively that the trial court's finding was within that court's discretion.

{¶ 2} This case involves a dispute over the "Tribbey B Joint Venture," a partnership investment in oil and gas prospecting wells in Oklahoma. TAP Management is a partner in the venture and is responsible for the day-to-day management of its activities. On September 11, 2012, the senior vice president of TAP Management, Tanner Reyes, solicited Mark Adams to invest in the venture. Ultimately, Adams purchased a one-half interest in 5.75 available partnership units in the venture.

{¶ 3} The Division asserts that during his time participating in the venture, Adams was treated as a limited partner or simple share investor and was denied information and control over the venture, as a result of the venture's organizing documents. For this reason, the Division asserts that shares in the venture were "securit[ies]" as defined in R.C. 1707.01(B), and were subject to its authority and regulation under R.C. Chapter 1707:

> "Security" means any certificate or instrument, or any oral, written, or electronic agreement, understanding, or opportunity, that represents title to or interest in, or is secured by any lien or charge upon, the capital, assets, profits, property, or credit of any person or of any public or governmental body, subdivision, or agency. It includes shares of stock, certificates for shares of stock, an uncertificated security, membership interests in limited liability companies, voting-trust certificates, warrants and options to purchase securities, subscription rights, interim receipts, interim certificates, promissory notes, all forms of commercial paper, evidences of indebtedness, bonds, debentures, land trust certificates, fee certificates, leasehold certificates, syndicate certificates, endowment certificates, interests in or under profit-sharing or participation agreements, interests in or under oil, gas, or mining leases, preorganization or reorganization subscriptions, preorganization certificates, reorganization certificates, interests in any trust or pretended trust, *any investment contract*, any life settlement interest, any instrument evidencing a promise or an agreement to pay money, warehouse receipts for intoxicating liquor, and the currency of any government other than those of the United States and Canada, but sections 1707.01 to 1707.50 of the Revised Code do not apply to the sale of real estate.

(Emphasis added.) *Id.* Based on an investigation, the Division asserted that during its solicitation of Adams to invest in the Tribbey B Joint Venture, TAP Management had made misrepresentations of the return on investment and comingled funds. A hearing officer held a five-day hearing and took evidence on the Division's cease-and-desist complaint to TAP

in June 2016, and on November 21, 2016, the hearing officer issued a 21-page report and recommendation. The report recommended that the Division should decline to issue a final cease-and-desist order, in part because Adams' interest in the joint venture did not constitute a "security" under R.C. 1707.01. In reaching that conclusion, the hearing officer found that Adams' interest in the joint venture gave Adams rights of management control and also that he exercised those rights. Based on that finding, the hearing officer concluded that Adams' interest in the joint venture was as a partner with management control and therefore was not a "security."

{¶ 4} The Commissioner of the Division rejected the hearing officer's recommendation. On July 26, 2017, the Division issued TAP Management a "final order to cease and desist," finding that under the terms of the joint venture, "none of the non-managing partners could make or approve any business decisions impacting the joint venture on their own; they needed to amass a majority vote to take action," and that the terms of the venture agreement gave partners "very little if any actual control over the venture." (Ex. A, at ¶ 20-21 attached to Aug. 2, 2017 Notice of Appeal.) The Commissioner of the Division applied the three-part federal-securities-law test set forth in *Williamson v. Tucker*, 645 F.2d 404 (5th Cir.1981) and the four-part test set forth by this court in *State v. George*, 50 Ohio App.2d 297 (10th Dist.1975), and concluded that the Tribbey B Joint Venture's organizing agreements left "so little power in the hand of the partner or venture that the arrangement in fact distributes power as would a limited partnership" that the interest constituted an "investment contract," falling within the definition of a "security" in R.C. 1707.01.

{¶ 5} On August 2, 2017, TAP Management appealed the Division's order pursuant to R.C. 119.12, contending that the cease-and-desist order was "not supported by reliable, probative, and substantial evidence and [was] not in accordance with law." (Aug. 2, 2017 Notice of Appeal at 2.) The Division certified its record to the Franklin County Court of Common Pleas, and on review, the trial court reversed the Division's order. The trial court also applied the four-part *George* test, and concluded that Adams' financial interest in the venture "satisfies the 'managerial control' test set forth in *State v. George*." (Aug. 21, 2020 Decision & Entry at 18.) The court held that the "undisputed facts * * * demonstrate that Adams possessed the right to exercise practical and actual control over the managerial

decisions of the Tribbey B Joint Venture." *Id.* at 18-19. The trial court's decision recited and relied heavily on the cross-examination of Adams at the hearing regarding his rights under the joint venture organizing agreement. *Id.* at 19-22 (quoting testimony). The court observed that while the Division briefing "spent considerable time citing federal securities law and the law of other states" to support its position, " '[i]n determining Ohio's definition of a security, Ohio case law must be scrutinized, rather than case law interpreting other state or federal statutes.' " *Id.* at 22-23 (quoting *Brannon* v. *Rinzler*, 77 Ohio App.3d 749, 753 (2nd Dist.1991). And applying the four-part *George* test to the facts presented in the record, the trial court concluded that Adams' "interest in the joint venture was not a 'security' under Ohio law, and his interest was not subject to regulation by the Ohio Division of Securities." *Id.* at 19-22 (quoting testimony).

{¶ 6} The Division has appealed the common pleas court's judgment to this court. But because our jurisdiction over administrative appeals by an agency under R.C. Chapter 119 is limited, we must first determine whether the Division's appeal presents a legitimate question of law or is simply a dispute over the application of settled law. R.C. 119.12(N) provides:

> The judgment of the court [of common pleas] shall be final and conclusive unless reversed, vacated, or modified on appeal. These appeals may be taken either by the party or the agency, shall proceed as in the case of appeals in civil actions, and shall be pursuant to the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505. of the Revised Code. *An appeal by the agency shall be taken on questions of law relating to the constitutionality, construction, or interpretation of statutes and rules of the agency*, and, in the appeal, the court may also review and determine the correctness of the judgment of the court of common pleas that the order of the agency is not supported by any reliable, probative, and substantial evidence in the entire record.

(Emphasis added.) *Id.*

{¶ 7} As the statute suggests, appeals of common pleas court judgments by the administrative agency are limited to specific questions of the constitutionality, construction, and interpretation of law, rather than general questions of law or fact. It has long been the rule in this District that "[w]here, in such an appeal, the trial court has made

no specific determination as to the meaning or application of a particular statute, rule or regulation, the Court of Appeals is without jurisdiction to review the judgment of the Common Pleas Court." *Mentor Marinas, Inc. v. Bd. of Liquor Control*, 1 Ohio App. 2d 219 (10th Dist.1964). paragraph three of the syllabus. *See also In re Appeal of Lauderbach*, 63 Ohio App.2d 157 (10th Dist.1978) *and Miami-Jacobs Career College v. Ohio Bd. Of Nursing*, 10th Dist. No. 11AP-544, 2012-Ohio-1416, ¶ 9-12 (citing and quoting *Mentor Marinas* and dismissing agency appeal that was "clearly based on a question of law * * *. [But on a question] that did not involve the constitutionality, construction, or interpretation of a statute or agency rule."). The Supreme Court of Ohio, moreover, has approved this District's rule. In *Miller v. Dept. of Indus. Relations*, 17 Ohio St.3d 226, 226-27 (1985), the Court held that "[t]he clear language of the provision allows an agency the right to appeal only on questions of law pertaining to state statutes as well as rules and regulations which were promulgated by the agency," and went on to affirm this court's dismissal of an appeal where "crux of the controversy surrounds an interpretation of the facts and whether they support the board's ruling." *Id.* at 227.

**{¶ 8}** The merits dispute presented in this case boils down to a relatively straightforward question, which is reasonably stated in the Division's assignment of error— that is, whether "[t]he trial court erred when it found that the investment in the Tribbey B Joint Venture was not a security under Ohio law." (Appellant's Brief at vii.) Under R.C. 119.12(N) we must determine whether this question involves the "constitutionality, construction, or interpretation of a statute or agency rule." We conclude that it does not.

**{¶ 9}** The Division's position has never been that the definition of "security" under R.C. 1707.01(B) requires additional constitutional analysis, construction, or interpretation. Rather, its essential contention before the hearing officer, before the trial court, and before this court is that although the plain language contained in the solicitation and organizing documents of the joint venture gave direct management power to individual investors— including the power to remove TAP Management as the managing venturer by a majority vote—that in practice that power was illusory, and therefore that Adams' investment in the joint venture was an "investment contract" and therefore is within the definition of a regulated "security" set forth in R.C. 1707.01.

{¶ 10} The Division's argument relies upon the very same four-part test for an "investment contract" applied by the hearing officer and the trial court, which is set forth in *State v. George*, 50 Ohio App.2d 297 (10th Dist.1975), and *Brannon*, 77 Ohio App.3d at 753. In *George*, we concluded that under Ohio law:

> [T]here is an "investment contract," and thence a "security," when "(1) an offeree furnishes initial value to an offeror, and (2) a portion of this initial value is subjected to the risks of the enterprise, and (3) the furnishing of the initial value is induced by the offeror's promises or representations which give rise to a reasonable understanding that a valuable benefit of some kind, over and above the initial value, will accrue to the offeree as a result of the operation of the enterprise, and (4) the offeree does not receive the right to exercise practical and actual control over the managerial decisions of the enterprise.

(Cleaned up and citations omitted.) *Id.* at 302-03. We went on to analyze the particular instrument at issue in that case under that four-part test and concluded that in that case "*by the terms of the agreement*, the offeree enjoyed no meaningful managerial control over the enterprise." (Emphasis added.) *Id.* at 304. We therefore concluded that the fourth prong of the *George* test was satisfied, and "that the trial court did not err in holding that the transaction here constituted the issuance and sale of a security, and that such sale and issuance were in violation of the statutes of Ohio * * *." *Id.* at 305. The Division's brief contends that the "economic realities of the Tribbey B Joint Venture" indicate that it was a security, and that while the trial court was correct in using the four-part test in *State v. George*, it "misapplied" the fourth prong of the test, because it found based on the text of documents and the testimony of Adams himself at the Division hearing, that "Adams was able to exercise practical and actual control over the managerial decisions of the enterprise." (Appellant's Brief at 10-11.)

{¶ 11} On review, we think it plain that the Division's argument does not involve "questions of law relating to the constitutionality, construction, or interpretation of a statute or agency rule." R.C. 119.12(N). Rather, the Division merely disagrees with the trial court's evaluation of the factual evidence, and therefore its conclusion. The trial court itself stated that the basis of its reversal of the Division's order was that shares in the Tribbey B Joint Venture were investment contracts was "not supported by reliable, probative, and

substantial evidence and is not in accordance with law." (Aug. 21, 2020 Decision & Entry at 23.)

{¶ 12} The Division does not object to the trial court's own characterization of its opinion. Instead, it argues that "the Division can appeal the trial court's decision because the trial court made a specific finding that the Tribbey B Joint Venture was not a security under Ohio law," and argues that this finding is "a specific interpretation by the trial court as to the meaning of a particular statute or regulation." (Appellant's Reply Brief at 4.)

{¶ 13} We disagree. In *Appeal of Lauderbach*, this court faced a similar argument:

> [The Department of Agriculture] contends that the trial court interpreted and applied R. C. 119.09 and attempts to bolster this contention by the first assignment of error, contending that the trial court erred in reversing the order of the State Personnel Board of Review on the basis that the order did not comply with the requirements of R. C. 119.09. A review of the record, however, reveals that the trial court did not reverse the order for noncompliance with R.C. 119.09 but, instead, reversed the order solely because it was not supported by reliable, probative, and substantial evidence. Merely asserting an assignment of error upon an issue which would give rise to a right of appeal pursuant to R.C. 119.09 cannot confer jurisdiction upon this court. As indicated, we find that the sole predicate upon which the trial court's judgment was based was the factual issue that the order appealed from was not supported by reliable, probative, and substantial evidence. Accordingly, "the agency" has no right of appeal under R. C. 119.12, there being no question of law relating to the constitutionality, construction, or interpretations of statutes and rules determined by the trial court.

*Appeal of Lauderbach*, 63 Ohio App.2d at 160-161. The Division has attempted an argumentative move analogous to the one we rejected in *Appeal of Lauderbach*. The Division does not suggest that the *George* test is unconstitutional, unclear, or does not comport with the text of R.C. 1707.01. Instead, it argues that every application of the test is a "a specific interpretation by the trial court as to the meaning of a particular statute or regulation" and therefore confers jurisdiction on this court. (Appellant's Reply Brief at 4.) In essence, the Division asserts that routine application of the four-part *George* test to the facts of the Tribbey B Joint Venture must of necessity turn the case into an issue of statutory interpretation. But that is only true insofar as *every* application of a test to facts affects the reach of a statute—it is not itself a "question[] of law relating to the constitutionality,

construction, or interpretation of a statute or agency rule." R.C. 119.12(N). The Division's argument turns every factual question regarding the existence of an investment contract into a legal issue that it can appeal. The limited jurisdiction of this court to review agency appeals simply does not reach that far.

{¶ 14} The Division argues that while it is undisputed that Adams possessed, reviewed, and signed the Tribbey B Joint Venture documents prior to investing in the venture and also that he both participated in meetings of the partners in the venture, and voted on management decisions, that economic realities outside the plain words of the documents rendered those powers illusory. The Division's argument is plainly a challenge to a factual determination made by the trial court. Accordingly, on review of this case we conclude that pursuant to R.C. 119.12(N) we lack jurisdiction to resolve the factual dispute presented by the Division. We therefore dismiss this appeal.

*Appeal dismissed.*

LUPER SCHUSTER and MENTEL, JJ., concur.

_____